STATE *vs.* HERBERT A. EDWARDS, and another.

Aroostook.     Opinion December 19, 1893.

*Mills. Public Use. Legislative Control. Constitutional Law. R. S., c. 57,*
*§§ 5, 6 ; c. 92 ; Stat. 1885, c. 332.*

Where the defendants operated a public grist-mill erected under the mill act, offering to grind grain for all comers, *held ;* that they, have dedicated their mill to public use, and must comply with legislative regulations of its use, so long as they keep their mill public.

They are bound by the statute to receive grain at their mill there tendered to be ground, and cannot take toll in excess of the amount therefor specified by the statute; any agreement for toll in excess of such amount is void.

The statute is constitutional.

ON EXCEPTIONS.

This was a complaint under the statutes charging two offenses ; first, for refusing to receive the complainant's grain to be ground, and, second, for taking excessive tolls for grain received and ground by the defendants.

The case was heard by a trial justice and was brought on appeal by the defendants into the Superior Court, for Aroostook County, where the defendants offered to prove that, on tendering the grain mentioned in the first charge, they refused to grind it unless the complainant would pay a toll in excess of one sixteenth part, whereupon he took the grain away to another mill.

In defense to the second offense, the defendants offered to prove that a contract had been entered into between them and

the complainant whereby he had agreed to pay them one eleventh part of the grain as toll for grinding the same ; that thereupon they had received the grain and ground and charged according to the contract one eleventh, and no more, for grinding the grain.

The presiding justice ruled that, under the statutes, the defendants were bound to receive the grists of grain offered and grind it for the toll specified by statute. He also ruled that the contract relied on by defendants, under the second count in the complaint, was void.

Under these rulings the jury returned a verdict of guilty, and the defendants took exceptions.

*Charles F. Daggett*, County Attorney, for State.
*Louis C. Stearns*, for defendants.

Sitting : Peters, C. J., Libbey, Emery, Haskell, Whitehouse, JJ.

Haskell, J. The defendants were convicted under R. S., c. 57, § § 5 and 6, as amended by the Act of 1885, c. 332, on two several counts ; first, of refusing to receive grain at their grist-mill there tendered to be ground ; second, of taking excessive toll. The defendants have exception to the ruling of the court that they were bound to receive the grists of grain offered, and grind the same for the toll specified by the statute, and that an agreement for toll in excess of that fixed by statute would be no defense.

The case does not show what kind of a mill the defendants operated, nor whether it was a public or private mill, nor whether it was a water mill, steam mill or wind mill. It assumes, however, that it was a grist-mill, used for grinding grain for the public.

Exceptions must show sufficient facts to make the ruling erroneous. *Reed* v. *Reed*, 70 Maine, 504. In this case, therefore, if the ruling excepted to be correct, and the statute under which the conviction was had be constitutional when applied to any kind of a grist-mill, judgment must be entered

on the verdict. And it may be assumed that defendants' mill was a public grist-mill, propelled by a head of water obtained under authority of the mill act, R. S., c. 92.

Assuming the mill to be a public mill, and the statute under which the conviction was had to be valid, an agreement between the owner of the grain and the defendants, for toll in excess of the statute quantity, can be no defense. The act of the defendants in taking excessive toll was just as much in defiance and violation of the statute, when taken by agreement with the owner of the grist, as if taken without his consent. The defendants' act is prohibited by the statute. They were required to run their public mill for statute toll, with equal dispatch for all the patrons of their mill. They were required to receive grists and grind them in their turn, without motive for unequal dispatch to those willing to pay an extra price for it. The taking of usury by agreement with the borrower of money is analogous. Freedom from blame on the part of the lender is not a bar to the borrower's right to recover back the usury. *Houghton* v. *Stowell*, 28 Maine, 215. The statute under which the conviction was had imposes no such condition.

But it is stoutly asserted that the statute is unconstitutional as an invasion of the private right of enjoyment of property. The mill act of Maine applies to all water mills; and whether its validity results from the exercise of eminent domain, as supposed by many cases, *Jordan* v. *Woodard*, 40 Maine, 317; *Great Falls Mfg. Co.* v. *Fernald*, 47 N. H. 444; *Olmstead* v. *Camp*, 33 Conn. 532, and others cited by Gould on Waters, § 253, and by the Supreme Court in *Head* v. *Amoskeag Mfg. Co.* 113 U. S., 9, or from the proper regulation of the rights of riparian owners, so as to best serve the public welfare, having due regard to the interests of all, as held in *Head* v. *the Amoskeag Mfg. Co. supra*, and in *Murdock* v. *Stickney*, 8 Cush. 113, and remarked by the Court in *Lowell* v. *Boston*, 111 Mass. 466, it is unnecessary now to consider.

It is conceded by all authorities that the public use of property by the individual is within the scope of legislative control. And it matters not whether the use be authorized by express statute

or dedicated by the individual proprietor. If it be a public use, it is within the supervision and control of the legislature. The troublesome question is, whether the use be public. *Tyler* v. *Beacher*, 44 Vt. 648. In most branches of business the public has an interest. That interest varies according to the surrounding conditions of the particular business in question. If it be a monopoly, the interest of the public to be fairly and conveniently served is much greater than when the monopoly ends by force of wholesome competition. A distinction must be made between a public use and a use in which the public has an interest. In the former case, the public may control, because it is a use within the function of government to establish and maintain. In the latter case, it is a private enterprise that serves the public and in which it is interested to the extent of its necessities and convenience. The former is clearly within the control of the legislature, while the latter may not be. Many authorities, however, go to that extent. *Munn* v. *Illinois*, 94 U. S. 113 ; *Budd* v. *New York*, 143 U. S. 517, and cases cited. The public is interested to be well and reasonably served at the store of the tradesman, the shop of the mechanic and the office of the professional man, and yet, all these vocations are private. The goods on sale in the store, material furnished by the mechanic, and the skill employed by the professional man are the individual property of each one respectively. Their vocations are exercised for their own gain, and they have a right to the fruits of their own industry without legislative control. It must not be understood that each one may not be properly subjected to suitable police regulations as to the manner of his business ; 2 Kent, 340 ; but the business cannot be thereby controlled and the profits to be gained therefrom destroyed, taken away or limited by the establishment of prices ; otherwise we should have a paternal government that might crush out all individual liberty, and the declaration of our constitution would become as valueless as stubble.

It is conceded by all authorities that common carriers, common ferries, common roads, common wharves, common telegraphs and common telephones, etc., and common grist-mills and

common lumber mills are of that public nature to be put under public control, whether operated under the authority of charters from the state, or by individual enterprise. Each of those cases is within the function of government to establish and maintain, and, therefore, to control, by whomsoever exercised. *Blair* v. *Cuming County*, 111 U. S. 363 ; *Head* v. *Amoskeag Mfg. Co.* 113 U. S. 9 ; *Stone* v. *Farmer's Loan and Trust Co.* 116 U. S. 307 ; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minnesota*, 134 U. S. 418.

Mills for the grinding of grain and for the sawing of lumber for all comers have been aided or established by the legislature from the earliest colonial times. Those mills were usually water mills ; but it is of no moment what the propelling power may be. *Burlington* v. *Beasley*, 94 U. S. 310. They have always been considered so necessary for the existence of the community that it was proper for government to foster or maintain them ; and in the absence of government aid, the individual proprietor, not pretending to serve the public, might maintain such mills as private mills, free from legislative interference, precisely as he might maintain a store, shop or other private business ; but when such proprietor makes his mill public, assumes to serve the public, then he dedicates his mill to public use and it becomes a public mill, subject to public regulation and control. He is not compelled to continue such public use, but so long as he does, he becomes a public servant and may be regulated by the public.

In the present case, the mill must be considered a public mill and rightfully within legislative control. No suggestion is made that the statute regulation is unreasonable, and therefore it is unimportant to consider whether the reasonableness of the statute regulation be a legislative or judicial function.

*Exceptions overruled.*