# GRAND RAPIDS AND INDIANA RAILWAY COM-PANY *v.* OSBORN.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 61.   Argued November 6, 1903.—Decided February 23, 1904.

Where the determination by the state court of an alleged ground of estoppel embodied in the ground of demurrer to an answer necessarily involves a consideration of the claim set up in the answer of a contract protected by the Constitution of the United States, a Federal question arises on the record which gives this court jurisdiction.

Provisions in the railway law of Michigan of 1873, for the creation of a new corporation upon the reorganization of a railroad by the purchaser at a foreclosure sale, did not constitute a contract within the impairment clause of the Constitution of the United States. *New York* v. *Cook*, 148 U. S. 397.

Purchasers of a railroad, not having any right to demand to be incorporated under the laws of a State, but voluntarily accepting the privileges and benefits of an incorporation law, are bound by the provisions of existing laws regulating rates of fare and are, as well as the corporation formed, estopped from repudiating the burdens attached by the statute to the privilege of becoming an incorporation.

THIS is a writ of error to review a judgment of the Supreme Court of the State of Michigan, which affirmed an order of the Circuit Court of Kent County, Michigan, awarding a peremptory writ of mandamus. By the writ the plaintiff in error was, in effect, commanded to reduce its rates for the transportation of passengers over its lines of railroad from

three cents per mile to two and one-half cents per mile, as required by an act of the legislature of Michigan known as Act 202 of the session of 1889.

The Grand Rapids and Indiana Railroad Company was the original owner of the road in question. That company was incorporated under the laws of Michigan and Indiana in 1870, and its line of railroad was constructed and put into operation before January 1, 1873. It also owned and operated in Michigan a number of short branch lines and several leased lines; and its mileage in Michigan exceeded three hundred miles. During the period between the incorporation of the company and the construction of its road, railroad companies which were operating in Michigan were authorized to regulate the tolls and compensation to be paid for the transportation in that State of persons and their baggage, but the charge which might be made for such transportation was limited to three cents per mile on roads over twenty-five miles in length. The Michigan statutes also contained provisions authorizing the execution of mortgages and the issue of bonds by railroad corporations. By Act 198, of the session of 1873, the laws relating to railroads were revised, and such revision with amendments is still in force. Compiled Laws of Michigan, 1897, c. 164, pp. 1937–2000. It was therein provided that corporations organized under a prior general railroad law " shall be deemed and taken to be organizations under this act." By subdivision ninth of section 9 of article II the maximum charge which railroad corporations might make for the transportation of passengers and their ordinary baggage on roads exceeding twenty-five miles in length was fixed at three cents per mile. Power was also conferred upon railroad companies to borrow money, issue bonds or other obligations therefor, and to mortgage their corporate property and franchises, and the income thereof, or any part thereof, as security. Section 2 of article I of the act was as follows:

" In case of the foreclosure and sale of any railroad, or part of any railroad, under any trust deed, or mortgage given to secure the payment of bonds sold to aid in its construction and equipment, or for other cause authorized by law, it shall

be competent and lawful for the parties who may become the purchasers, and such others as they may associate with themselves, to organize a corporation for the management of the same, and issue stock in the same in shares of one hundred dollars each, to represent the property in said railroad; and such corporation, when organized, shall have the same rights, powers and privileges as are or may be secured to the original company whose property may have been sold under and by virtue of such mortgage or trust deed. Such organization may be formed by virtue of a declaration or certificate of the purchasers at the sale under said mortgage or trust deed, which shall set forth the description of the property sold, and the date of the deed under which it was sold, or the decree of the proper court, if it shall have been sold by virtue of a decree of any court, and with such description of the parties to the deed or suit as may identify the one or the other, or both; the time of the sale, and the name of the officer who sold the same; and also the purchasers, and the amount paid, and the stockholders to whom stock is to be issued, and the amount of the capital stock and the name of the new corporation, and such other statements as may be found requisite to make definite the corporation whose property may have been sold, and the property sold, as well as the extents and rights and property of the new company; which said certificate or declaration shall be signed by all of the said purchasers and shall be addressed to the Secretary of State; and being filed and recorded in his office, the said corporation shall become complete, with all the powers and rights secured to railroad companies under this act, to all the provisions of which, and amendments thereto, it shall be subject, and a certified copy of the said certificate or declaration shall be *prima facie* evidence of the due organization of said company."

There was also a general provision that the act might be altered, amended or repealed, but that such alteration, amendment or repeal " shall not affect the rights of property or companies organized under it."

In 1884 the Grand Rapids and Indiana *Railroad* Company executed a second mortgage upon its railroad property to

secure an issue of three million dollars of bonds. While this mortgage was in force, and in the year 1889, subdivision ninth of section 9 of article II of the general railroad law of 1873—the section containing an enumeration of powers conferred upon railroad corporations—was amended to read as follows:

" Ninth.. To regulate the time and manner in which passengers and property shall be transported, and the tolls and compensation to be paid therefor ; but such compensation for transporting any passenger and his or her ordinary baggage, not exceeding in weight one hundred and fifty pounds, shall not exceed the following prices, viz: for a distance not exceeding five miles, three cents per mile ; for all other distances, for all companies, the gross earnings of whose passenger trains, as reported to the commissioner of railroads for the year one thousand eight hundred and eighty-eight, equaled or exceeded the sum of three thousand dollars for each mile of road operated by said company, two cents per mile, and for all companies, the earnings of whose passenger trains reported as aforesaid, were over two thousand and less than three thousand dollars per mile of road operated by said company, two and a half cents per mile, and for all companies whose earnings reported as aforesaid were less than two thousand dollars per mile of road operated by said company, three cents per mile : *Provided*, That in future, whenever the earnings of any company doing business in this State, as reported to the commissioner of railroads at the close of any year, shall increase so as to equal or exceed the sum of two thousand or three thousand dollars per mile of road operated by said company, then in such case said companies shall thereafter, upon the notification of the commissioner of railroads, be required to only receive as compensation for the transportation of any passenger and his or her ordinary baggage, not exceeding in weight one hundred and fifty pounds, a rate of two cents and a half, or two cents per mile, as hereinbefore provided : *Provided*, That roads in the Upper Peninsula which report as above provided passenger earnings exceeding three thousand dollars per mile, shall not charge to exceed three cents per mile, and roads re-

porting less than three thousand dollars per mile shall be allowed to charge not to exceed four cents per mile. . . ."

The mortgage of 1884 was foreclosed; and, in 1896, under decrees of Circuit Courts of the United States, the property covered by such mortgage was sold to John C. Sims, subject to a prior mortgage securing a large issue of outstanding bonds. Sims and his associates subsequently executed the certificate authorized by and complied with all the requirements mentioned in section 2 of article I of the general railroad law of 1873 aforesaid, and by virtue thereof the plaintiff in error came into existence and took control of the railroad property in question. It continued to exact a charge for the transportation of passengers and their ordinary baggage of three cents per mile.

In a statutory report made in 1891 by the plaintiff in error to the commissioner of railroads of Michigan it was represented that the gross earnings in Michigan of the passenger trains on its lines of railroad exceeded $2,000 per mile of road operated. Thereupon said commissioner notified plaintiff in error to reduce its rates on passenger traffic to two and one-half cents per mile for distances exceeding five miles. The order not being obeyed, a proceeding in mandamus was instituted to compel compliance. In its answer to the rule to show cause the company specially set up the claim that, so far as it was concerned, the statute was repugnant to the due process and equal protection clauses of the Fourteenth Amendment, and also violated the commerce clause of the Constitution of the United States. It recited the cost to the plaintiff in error of the property indirectly acquired by it under the foreclosure, the amount of outstanding capital stock, the bonded indebtedness of the road and the annual interest on such bonded debt; and represented that the income from passenger traffic which would be received if it put in force the reduced rates would leave but a trifling surplus after deduction of reasonable operating expenses, interest on debt and other fixed charges. It was also averred in support of the charge that the act was repugnant to the commerce clause of the Constitution of the United States, that the gross receipts from passenger traffic in Michigan forming the basis of the

proposed reduction in rates included receipts from interstate traffic, and that if such interstate traffic receipts were included the gross receipts would be less than $2,000 per mile, and hence the reduced rates would not be enforcible.

On the hearing of the order to show cause it was contended on behalf of the relator that the railroad company, by incorporating under the law which embodied the provisions complained of, thereby entered into a contract with the State to carry passengers at the rate fixed in the statute. By leave a demurrer was filed to the answer, the single ground stated in support thereof being the following:

"That upon its incorporation in 1896 under the general railroad law, the said respondent entered into and became a party to a contract with the State of Michigan, one of the conditions of which is the agreement on the part of said respondent to carry all passengers at the rates fixed by subdivision ninth, section nine of article two of said general railroad law, under which it is incorporated."

The Circuit Court sustained the demurrer, and awarded a peremptory mandamus commanding the railway company to "forthwith and hereafter issue and cause to be issued tickets to all persons applying therefor and desiring to travel over its line of road in the State of Michigan, and to accept tolls or compensation for transporting any person and his or her ordinary baggage, not exceeding in weight one hundred and fifty pounds, at the rate of two and one-half cents per mile for all distances exceeding five miles." The record by writ of certiorari was removed to the Supreme Court of Michigan. In that court leave was given to add to the demurrer the following additional ground, viz: " 2. That upon its incorporation in 1896 under the general railroad law, the said respondent became subject to that law and the provision therein requiring it to carry passengers at the rates fixed in subdivision ninth, section 9 of article II of that law, said provision in regard to rates being one of the conditions of the existence of respondent." Waiving a decision of the first ground of demurrer, the order awarding a peremptory writ of mandamus was affirmed upon the second ground just recited. 130 Michigan,

248. By writ of error the judgment of affirmance has been brought here for review.

*Mr. Thomas J. O'Brien,* with whom *Mr. James H. Campbell* was on the brief, for plaintiff in error:

The rate in question is unreasonable as matter of fact. It is admitted by the demurrer to the answer. *Covington & Lexington T. R. Co.* v. *Sanford,* 164 U. S. 578, 592.

The enforcement of that rate upon the plaintiff in error would deprive it of its property without due process of law, and deny to it the equal protection of the laws, in violation of the Fourteenth Amendment, section 1. *Chicago, Mil. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418 ; *Minneapolis Eastern R. Co.* v. *Minnesota,* 134 U. S. 467 ; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, and the cases following it in 154 U. S. ; *Smyth* v. *Ames,* 169 U. S. 466 ; *L. S. & Mich. S. R. Co.* v. *Smith,* 173 U. S. 684 ; *Chicago, Mil. & St. P. R. Co.* v. *Tompkins,* 176 U. S. 167 ; *Chicago & G. T. R. Co.* v. *Wellman,* 143 U. S. 339.

The statute prescribing maximum rates of passenger fares as construed by the Supreme Court of that State is repugnant to the Fourteenth Amendment. *Wellman case,* 83 Michigan, 592 ; *Wabash case,* 123 Michigan, 669 ; *S. C.,* 126 Michigan, 113, held that the legislature is the final and exclusive judge of what are reasonable rates and that the reasonableness of rates fixed by statute is not open to review or inquiry in the courts. The law is that reasonableness of rates prescribed by statute is one for judicial determination. *C. M. & St. Paul R. Co.* v. *Minnesota,* 134 U. S. 418, 457 ; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362, 397 ; *St. L. & S. F. R. Co.* v. *Gill,* 156 U. S. 649, 657 ; *Smyth* v. *Ames,* 169 U. S. 466, 527.

The method of establishing rates, undertaken by the Michigan statute, has all the features of the Minnesota plan, for which the latter was condemned, and to a more objectionable degree. The Michigan statute neither contemplates nor allows any inquiry regarding the reasonableness of the rates.

The statute violates the commerce clause of the Constitution and attempts to regulate interstate commerce. In esti-

mating earnings interstate fares earned are included. *Commissioner* v. *Wabash R. Co.*, 126 Michigan, 113.

It is not competent to consider interstate business in determining the reasonableness of statutory rates for local fares, and it is much less competent to actually include interstate earnings, or any part of them, in the computation which is the basis of the local rate to be charged. *Louisville & Nashville R. Co.* v. *Eubank*, 184 U. S. 27; *Wabash &c. R. Co.* v. *Illinois*, 118 U. S. 527; *Hanley* v. *Kansas City Southern Ry. Co.*, 187 U. S. 617; *Fargo* v. *Michigan*, 121 U. S. 230; *Lyng* v. *Michigan*, 135 U. S. 161; *Phila. & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, and cases cited; *Leloup* v. *Port of Mobile*, 127 U. S. 640.

A state statute, requiring the payment of a license fee for the privilege of doing business in the State by a corporation engaged in interstate business, and at the same time in local business within the State, is invalid; the exaction of a license fee is a tax on the occupation, and therefore on the business; the fact that part of the business is internal to the State does not remove the difficulty, because the tax affects the whole business, interstate and local, without discrimination. *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 204.

Provisions in a state law, which impose upon foreign corporations conditions which are in conflict with the constitution, cannot be enforced against a corporation which avails itself of the law, even after the enactment of such a provision. *Barrow* v. *Burnside*, 126 U. S. 186; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202.

Rights under the Constitution of the United States, and objections to the constitutionality of the statute, were expressly and in due time asserted, and the effect of the judgment was to deny those rights and overrule the objections. This court has jurisdiction to review the judgment, although the state court did not, in express terms, pass upon the Federal constitutionality of the law. *Andrews* v. *Andrews*, 188 U. S. 14; *Detroit, Ft. Wayne &c. R. Co.* v. *Osborn*, 189 U. S. 383;

*Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574 ; *Consolidated Coal Co* v. *Illinois,* 185 U. S. 203 ; *Home Ins. Co.* v. *Morse,* 20. Wall. 445.

Mr. *Horace M. Oren,* with whom *Mr. Charles A. Blair,* Attorney General of the State of Michigan was on the brief, for defendant in error.

The provisions of the Fourteenth Amendment authorize no interference with the operation of rates or schedules established by railway charters or incorporation laws in cases where the corporation complaining accepted the charter or voluntarily organized under the act establishing the rate or schedule. *San Diego, L. & T. Co.* v. *National City,* 74 Fed. Rep. 79 ; *Dow* v. *Electric Co.,* 31 Atl. Rep. 22 ; *S. C.,* 116 U. S. 489 ; *Pitkin* v. *Springfield,* 112 Massachusetts, 509 ; *Deverson* v. *Railroad Company,* 58 N. H. 129, 131, and cases cited ; *Dodge* v. *Stickney,* 61 N. H. 607, 610 ; *People* v. *Murray,* 5 Hill, 468, 472.

The provision for the graduation of rates of fare by the per mile passenger earnings of roads subject to the act, is not violative of the provision of the Constitution of the United States, which inhibits a State from denying to any person within its jurisdiction the equal protection of the laws. The classification is not arbitrary, unjust or unreasonable, and its operation does not result in unequal privileges to different corporations that in justice should be on the same basis. *Magoun* v. *Ill. Trust & S. Bank,* 170 U. S. 283.

The classification made in the act, by fixing a graduated rate, based upon earnings per mile, has been held valid. *Chicago & Grand Trunk R. R. Co.* v. *Wellman,* 143 U. S. 339 ; 83 Michigan, 606, and see also *Railroad Company* v. *Iowa,* 94 U. S. 155 ; *Dow* v. *Biedelman,* 125 U. S. 680 ; *Clark* v. *Titusville,* 183 U. S. 329.

Nor is the commerce clause of the United States Constitution infringed by the provisions of the state law for the adjustment of passenger rates.

As incident to the power to create corporations to engage in interstate commerce, the State has authority in the charter

or by the terms of the incorporation acts to prescribe the terms and conditions upon which such commerce shall be engaged in. *Camden & Amboy R. & T. Co.* v. *Briggs*, 22 N. J. L. 623, 651; *Railroad Company* v. *Maryland*, 21 Wallace, 456, 473; *Cov. & Cin. Bridge Co.* v. *Kentucky*, 154 U. S. 204, 223.

A purchaser of a railroad on foreclosure who incorporates under the general railroad law of Michigan must be held to have done so voluntarily, and a corporation thus created is bound to conform to the schedule of fares therein provided the same is a company incorporated thereunder to construct and operate a new road.

A corporation is subject to, and cannot question the validity of, the statute under which it has been voluntarily incorporated. *Louisville & N. R. Co.* v. *Kentucky*, 183 U. S. 503, 512, 513 (161 U. S. 703); *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362, 409, 411; *Ashley* v. *Ryan*, 153 U. S. 436, 443.

The statute, fixing the maximum rate of charge, is not unconstitutional because declared by the state Supreme Court to be conclusive upon the courts and to allow no judicial investigation as to the reasonableness of the rates fixed.

The cases on brief of plaintiff in error are inapplicable. See *Venice* v. *Murdock*, 92 U. S. 494; *Genoa* v. *Woodruff*, 92 U. S. 502; *Michigan Central R. Co.* v. *Myrick*, 107 U. S. 102; *Clark* v. *Bever*, 139 U. S. 96; *Norton* v. *Shelby County*, 118 U. S. 425.

The statute is not void by reason of not providing for a judicial investigation as to reasonableness of rates fixed. *Budd* v. *New York*, 143 U. S. 517; *Brass* v. *North Dakota*, 153 U. S. 391; *San Diego L., etc., Co.* v. *National City*, 174 U. S. 739; *St. L. & San Fran. R. Co.* v. *Gill*, 156 U. S. 649.

As to the right to be a corporation, see *Meyer* v. *Johnson*, 53 Alabama, 237, 325; *Eldridge* v. *Smith*, 34 Vermont, 484, 489.

It was not intended that the reorganized company should have any franchise rights or powers or privileges which did not have their source in, or which were not held pursuant to, the act under which the reorganizing company was incorporated.

The right to invoke the protection of the Fourteenth Amendment of the Constitution of the United States is not a franchise or right originating in laws permitting incorporation, and hence cannot be claimed to have been assigned or transferred by the operation of such laws. *Ches. & Ohio Ry, Co.* v. *Miller,* 114 U. S. 181; *Wilson* v. *Gaines,* 103 U. S. 417; *Ala. & Vicksburg Ry. Co.* v. *Odeneal,* 73 Mississippi, 34, 39.

The judgment of the Supreme Court of Michigan was not based upon any Federal question and this court is without jurisdiction to review it. *Clay* v. *Smith,* 3 Peters, 411; *Beaupré* v. *Noyes,* 138 U. S. 397; *Eustis* v. *Bolles,* 150 U. S. 361.

The court passed not upon questions of a Federal or general commercial character, but upon questions of purely local Michigan law, involving the construction of the state statute and the application of the principles of the Michigan common law. The decision of a state court, upon questions of this character, is conclusive and binding upon this court. *Luther* v. *Borden,* 7 How. 40; *Bucher* v. *Cheshire R. Co.,* 125 U. S. 555; *Pittsburg, etc., R. Co.* v. *Backus,* 154 U. S. 421; *McElvaine* v. *Brush,* 142 U. S. 155; *Millers' Exrs.* v. *Swann,* 150 U. S. 132; *Nor. Cen. Railway Co.* v. *Maryland,* 187 U. S. 258, 261.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

A jurisdictional question which was raised by the defendant in error requires first to be disposed of. It was objected. that the judgment of the Supreme Court of Michigan in the case at bar was not based upon a Federal question, and hence this court is, it is urged, without jurisdiction to entertain this writ of error. The objection, however, is not well founded. It is plain from the averments of the answer of the railroad company to the petition in mandamus that the company relied upon the provisions of the general railroad law of 1873, authorizing the incorporation of the purchasers of a railroad after sale in the foreclosure proceedings, as constituting a contract protected by the Constitution of the United States. The determination of the alleged estoppel embodied in the ground

of demurrer to the answer of the railroad company, and which
was sustained by the Supreme Court of Michigan, necessarily
involved a consideration of this claim of a contract right, pro-
tected from impairment by the Constitution of the United
States. In substance, if not in express terms, such question
was passed upon by the court below. A Federal question which
gives this court jurisdiction therefore arises on the record.

That the section of the general railroad law of 1873, making
provision for the creation of a new corporation upon the reor-
ganization of a railroad by the purchaser at a foreclosure sale,
did not constitute a contract protected by the Constitution of
the United States, is concluded by the decision in *People ex
rel. Schurz* v. *Cook*, 148 U. S. 397. There the purchasers of
railroad property in the State of New York under a sale upon
foreclosure of a mortgage sought to escape the payment of an
incorporation fee laid by the authority of certain statutes of
the State of New York enacted after the execution of the
mortgage. The claim was made that the statutes of the State
of New York authorizing the purchasers of railroads sold upon
foreclosure to incorporate, which were in force when the mort-
gage was executed, constituted a contract between the State
of New York and the bondholders and their privies, and that
the enforcement of the subsequent statute providing for the
payment of an incorporation fee violated the obligation of the
alleged contract. The Court of Appeals of New York held
to the contrary, and its judgment was affirmed by this court.
In the course of the opinion of this court it was said (p. 410):

" The plaintiffs in error acquired the properties and fran-
chises of these corporations, which were subject to the taxing
power of the State, after the act of 1886 was passed and went
into effect. There is no provision of the law under which they
made their purchase requiring them to become incorporated,
but desiring corporate capacity, they demanded the grant of
a new charter under which to exercise the franchises so ac-
quired, without compliance with the law of the State existing
at the time their application for incorporation was made. We
are clearly of the opinion that the act of 1874, as amended in
1876, set up and relied upon by them, does not sustain such a

claim. The provisions of that act do not constitute a contract on the part of the State with either the corporations, or the mortgagees, bondholders or purchasers at foreclosure sale. They are merely matters of law instead of contract, and the right therein conferred upon purchasers of the corporate properties and franchises sold under foreclosure of mortgages thereon, to reorganize and become a *new corporation*, is subject to the laws of the State existing or in force at the time of such reorganization and the grant of a new charter of incorporation. *Memphis &c. Railroad Co.* v. *Commissioners*, 112 U. S. 609."

It results from the foregoing that Sims—the purchaser of the railroad property in question at the sale under foreclosure —and his associates could not demand to be incorporated under the statutes of Michigan as a matter of contract right. Possessing no such contract right, they or their privies cannot now be heard to assail the constitutionality of the conditions which were agreed to be performed when the grant by the State was made of the privilege to operate as a corporation the property in question. Having voluntarily accepted the privileges and benefits of the incorporation law of Michigan the company was bound by the provisions of existing laws regulating rates of fares upon railroads, and it is estopped from repudiating the burdens attached by the statute to the privilege of becoming an incorporated body. *Daniels* v. *Tearney*, 102 U. S. 415, and cases cited. That a railroad corporation may contract with a municipality or with a State to operate a railway at agreed rates of fare is unquestionable. And where the provisions of an accepted statute respecting rates to be charged for transportation are plain and unambiguous, and do not contravene public policy or positive rules of law, it is clear that a railroad company cannot avail of privileges which have been procured upon stipulated conditions and repudiate performance of the latter at will. Whether if a condition in a statute is couched in ambiguous language and is susceptible of two constructions, as it is claimed is the case before us in respect to the basis upon which the gross receipts per mile of operated road were to be calculated, a construction should be

adopted which will not render the condition repugnant to the Constitution of the United States, we need not determine. The statute in question, in its entirety, has been construed by the Supreme Court of Michigan and held valid, and its decision as to the proper interpretation of the language of the act in respect to the mode of ascertaining the gross receipts per mile does not render the statute repugnant to the Constitution of the United States, within the ruling recently made by this court in *Wisconsin & Michigan Railway Company* v. *Powers*, 191 U. S. 379.

                                                   *Judgment affirmed.*