## OWENS v. CORPORATION COMMISSION OF STATE OF OKLAHOMA et al.

### No. 1068.

District Court, W. D. Oklahoma.

Jan. 10, 1930.

### Statement of the Case.

The plaintiff challenges the power of the Oklahoma Legislature to enact a statute declaring cotton gins to be public utilities; vesting an administrative commission with power to regulate charges for the service rendered; and providing that gins may not be constructed nor operated without consent of such commission. A temporary restraining order was asked for and granted; an application for an interlocutory injunction was pressed, and a three-judge court assembled as provided by section 266 of the Judicial Code (28 USCA § 380). By the time the court was assembled, the cause was at issue, and the parties introduced their evidence, and submitted the case for decision on the application for a permanent as well as an interlocutory injunction.

In his bill, the plaintiff alleges that he owns and operates a cotton gin at Chandler, Oklahoma; sets out the Statute (Comp. St. Okl. 1921, § 3712 et seq.), the essential parts of which are copied in the margin [1]; sets up

[1] Section 3712. *"Cotton gins—declared public utility.* That cotton gins are hereby declared to be public utilities, and the operation of same for the purpose of ginning seed cotton is declared to be a public business."

Section 3713. *"Gins to be licensed.* That no person or persons, or corporation in this state shall be permitted to maintain and operate a gin for the purpose of ginning seed cotton without first having secured a license for such purpose from the State Corporation Commission. The fee for such license to be issued by the Corporation Commission shall be $1.00 and shall be converted into the State Treasury."

Section 3714. *"Power of corporation commission—location of gins.* That the Corporation Commission, in issuing such license, shall have the right to take into consideration the necessity for the operation of a gin for such purpose at the place it is located; provided, nothing herein shall operate to prevent the licensing of gins now established. If the facts

an amendment made in July, 1929 (Laws 1929, Sp. Sess., c. 240) which takes from under the act certain co-operative associations which gin for their members only; and alleges that plaintiff is not within the excepted class. He then avers that the Corporation Commission promulgated rates for ginning cotton in September, 1928, which are still in force, and proposed to hold hearings for the purpose of promulgating rates for the 1929-1930 season. He avers that the statute deprives him of his property without due process of law, and denies to him the equal protection of the law, all in contravention of the Fourteenth Amendment to the Constitution of the United States. The prayer is that the Corporation Commission be enjoined from enforcing any orders fixing rates for the service rendered by plaintiff to his customers.

The defendants have filed a Motion to Dismiss and Answer. It is admitted that the

disclose that the ginning facilities afforded by gins already licensed are adequate for the reasonable demands of such place for the ginning of cotton, the said Corporation Commission will be justified in refusing such license; provided, that on the presentation of a petition signed by not less than fifty farmer petitioners of the immediate vicinity, the Corporation Commission must issue a license as set out in petition. In addition to said authority, said Commission shall have a right to take into consideration the responsibility, reliability and the qualifications and the capacity of the person or persons, or corporations to do such ginning business as to afford all reasonable facilities, conveniences and services to the public and shall have the power and authority to require such facilities, conveniences and services to be afforded the public."

Section 3715. "Regulation of gins. That the Corporation Commission shall have the same power and authority and be charged with the duty of regulating and controlling such cotton gins in all matters relating to the performance of public duties and the charges therefor, and correcting abuses and preventing unjust discrimination and extortion, as is exercised by said Commission as to transportation and transmission companies, and shall have the same power to fix rates, rules, charges and regulations to be observed by such person or persons, or corporation, operating gins, and the affording of all reasonable conveniences, facilities and service as it may impose as to transportation or transmission companies."

In 1929 (Laws 1929, Sp. Sess., c. 240, § 1), this statute (section 3712) was amended, so as to limit its operation to "cotton gins maintained and operated for the purpose of ginning seed cotton of the general public, or of persons other than the person or persons, or the stockholders of the corporation maintaining and operating said gin. * * *"

defendants have promulgated the orders fixing rates, as set out in the bill; and plaintiff's ownership of a gin is not denied. The constitutionality of the statute is raised by the motion to dismiss, as well as by the answer. In addition, the defendants set up these defenses:

(a) That the plaintiff did not appeal from the order of the commission fixing the rates complained of, to the Supreme Court of Oklahoma, which is the final administrative step in the fixing of rates by the commission.

(b) That since 1907, the public has acquiesced in the regulation by the state of public businesses; that the statute in question has been in existence and operation since 1915, with the acquiescence of the public.

(c) That the plaintiff herein is estopped from challenging the constitutionality of the statute, in that he has applied for and received licenses, under this statute, to operate gins in five towns of Oklahoma, which licenses are still held by him; and that the effect of such licenses was to exclude others from the operation of gins at such points.

(d) That a large proportion of the gins in Oklahoma are operated by those interested in the purchase of cotton seed and the staple; that such persons have such an economic advantage over the ginners who are not so interested, as to give the former a virtual monopoly of the ginning business.

(e) That the cotton growers of Oklahoma have been subjected to numerous abuses growing out of the monopolistic conditions affecting the storing of seed cotton, and the storing and delivery of cotton seed.

At the trial, the jurisdictional amount was stipulated as a fact. Evidence was introduced, consisting of affidavits and the transcript of the testimony in Case No. 1047-Equity, theretofore tried in this court. The evidence shows, and this court finds the facts to be:

That while there is a market for seed cotton, that is, that the grower of cotton may sell his product before it is ginned, the prevailing custom of the business is that the grower of the cotton employs the ginner to gin his cotton for him, and he pays for the service, the grower owning the cotton after it is ginned and baled. It is also the custom to sell the seed at the time and place of ginning, generally to the ginner. Gins may be erected at any place, although expedience dictates that they should be reasonably close to market. The investment necessary to put in

a first-class gin is from $10,000 to $40,000. No right of eminent domain, or use of public streets or rights, is exercised.

The evidence does not disclose any monopoly of the business. On the contrary, it shows that the Chickasha Cotton Oil Company is the owner or owns a controlling interest in 179 of the cotton gins located and operating within the state of Oklahoma; that Choctaw Cotton Oil Company for the year 1928–1929 owned and operated, or owned a controlling interest in, 74 gins operating within the state of Oklahoma; that the Anadarko Cotton Oil Company owned and operated, or owned a controlling interest in 24 cotton gins within the State of Oklahoma; that of the total gins operating within the state of Oklahoma, there were 21 concerns, each of which operated more than five gins; that 284 of the cotton gins operating within the state of Oklahoma, are owned and controlled by cotton oil companies or cotton seed crushers. There are about 1300 gins in Oklahoma, owned by 450 to 500 different owners.

In the cotton belt, gins are generally not more than eight to ten miles apart; there is no point in Oklahoma with more than one gin, where any concern has a monopoly of the business; that, with increased facilities of transportation, there is competition now not only between different gins at the same town, but among different towns; that there is competition as to the quality of the ginning, lack of delay, and other matters of service. That prior to the statute in question, competition was principally of service, the prices charged being kept relatively uniform by competition. There are many points where there is only one gin, and localities where it is inconvenient for a grower to take his cotton to other gins.

The evidence shows that there have been marked improvements in the ginning of cotton, and the service rendered, since this law was enacted. This may be attributable to the law, or to the spirit of progress that has brought improvements to many lines of unregulated business; or to both. Such improvements have been made in machinery, that during the ten years last past, practically all of the gins in the state have been reconstructed. The defendants introduced letters showing that some of the growers and ginners in Oklahoma liked the work of the commission and approved of the law.

That prior to the enactment of the law in question in 1915, the Corporation Commission, acting under the Anti-Trust Act (article 1, c. 90, C. O. S. 1921, and particularly section 11032), did regulate cotton ginning, by prohibiting discrimination and unlawful agreements which fixed arbitrary rates or established illegal practices limiting the market of the grower for his seed or staple. That there has been a general public acquiescence in the law since its enactment.

The evidence shows that the plaintiff owned two gins at Chandler, Oklahoma, prior to 1915; that in 1927 he bought out a farmers' co-operative gin at that place, but has only operated two of the three since. The evidence discloses that there is no gin at Chandler which is within the terms of the 1929 amendment; and no evidence that any gin within the terms of that amendment is in competition with plaintiff. That he has continued to charge the promulgated rate of the commission. That the plaintiff in 1923, applied for licenses to operate six gins at five different points in Oklahoma.

The commission's order made in 1928, sets out the practical difficulties encountered in establishing rates for the service. The commission divided the state into zones, and the price to be fixed for the ensuing year was largely affected by the prospects of the crop. It shows that some gins made large returns under the rates enforced for the preceding year and others lost money. The commission proceeds:

"It is also true, as stated in numerous orders of the Commission, that one of the most difficult duties which the Commission finds itself confronted with, is the establishment of a just rate for the ginning of seed cotton, which will be applicable to conditions existing in different portions of the State of Oklahoma, and as has heretofore been stated, all that the Commission can do is to attempt to average conditions in the different sections of the state and to apply such rates in those sections as appear to be reasonable, both to the parties engaged in the service of ginning cotton and to those persons engaged in the growing of that product."

After stating the difficulties of the problem, the Commission stated:

"As has always been true, it is shown from the record in this cause that ginners operating under the most favorable conditions and possessing certain advantages in the way of patronage, have been able to enjoy a greater return upon the investment than rate-making principles would justify. One of the peculiar things about the establishment of a cotton gin rate, is that frequent examples are found in the record of ginners operating under practically identical conditions in the same town

or community, ginning approximately the same number of bales of cotton, and one of the ginners realizing a reasonable return, and in some instances more than a reasonable return upon his investment, while the other ginner, under the same conditions, suffers a loss as a result of his operations. These are some of the things which make it difficult for the Commission, in the determination of what should be a proper charge for rendering the service to the cotton growers of the State of Oklahoma which the cotton ginner renders."

The order sought to be enjoined is as follows:

"It is therefore the order of the Commission, premises considered, that the following schedule of rates and charges for the ginning of seed cotton throughout the State of Oklahoma for the season of 1928–1929 and until the further order of the Commission, be and it is hereby established, to-wit: [here follows schedule]."

The prayer of the bill is—

"That the respondents, Corporation Commission of the State of Oklahoma, C. C. Childers, Fred Capshaw and E. R. Hughes, and each of them, their assistants, agents, attorneys and employees, and all persons acting through or under them, be enjoined and restrained from exercising any jurisdiction over this complainant by enforcing or attempting to enforce its said order of September 15, 1928, fixing rates, rules and regulations, and from conducting any hearings, or making any orders, rules, or regulations affecting this complainant or complainant's property or business, and any and all others similarly situated."

J. S. Ross, of Oklahoma City, Okl., for complainant.

J. Berry King, Atty. Gen., of Oklahoma, and E. S. Ratliff, of Oklahoma City, Okl., for defendant.

Before McDERMOTT, Circuit Judge, and WILLIAMS and VAUGHT, District Judges.

McDERMOTT, Circuit Judge (after stating the facts as above).

The purpose of this action is to determine the power of the state legislature to do two things: (1) To forbid a citizen to erect a cotton gin and gin cotton for others, without consent of the Corporation Commission; and (2) To prescribe the charge such owner shall make to his neighbor for the service rendered.

The questions presented are fundamental and have been ably and extensively briefed. The defendants press upon us Brass v. Stoeser, 153 U. S. 391, 14 S. Ct. 857, 38 L. Ed. 757, where a North Dakota statute regulating the charge for service rendered by country elevators dotted over the state, was upheld; and the close analogy to Township of Burlington v. Beasley, 94 U. S. 310, 24 L. Ed. 161, where a steam grist mill was held to be a public utility; and the general language used in Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, and in Budd v. New York, 143 U. S. 517, 12 S. Ct. 468, 36 L. Ed. 247, and the opinions expressed in Tallassee Oil Co. v. H. S. & J. L. Holloway, 200 Ala. 492, 76 So. 434, L. R. A. 1918A, 280, and State v. Edwards, 86 Me. 102, 29 A. 947, 25 L. R. A. 504, 41 Am. St. Rep. 528. The defendants recall the early English laws regulating the surgeon (Y. B. 43 Ed. III, 6, pl. 11), the tailor (Y. B. 22 Ed. IV, 49, pl. 15), the blacksmith (Y. B. 46 Ed. III, 19, pl. 19), the victualer (Y. B. 39 Hen. VI, 18, pl. 24), the baker (Lib. Assis. 138, pl. 44), as well as the miller (Hix v. Gardner, 2 Bulstrode (Eng.) 195), the innkeeper, the ferry man and the wharfinger. Defendants rely upon German Alliance Ins. Co. v. Superintendent of Ins. of State of Kansas, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, which plaintiff distinguishes because of monopolistic features in the fixing of an insurance rate; and Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165; Brown Holding Co. v. Feldman, 256 U. S. 170, 41 S. Ct. 465, 65 L. Ed. 877, and Wilson v. New, 243 U. S. 332, 37 S. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024, which plaintiff says were based solely on a grave but temporary emergency not present here.

The plaintiff, upon the other hand, argues that the broad expressions in the Munn Case must be considered in the light of the facts; that that case, and the two succeeding elevator cases, really rest upon the proposition that the statutes involved were necessary to keep open and unobstructed the channels of interstate commerce; that the historical instances cannot be extended by analogy, and moreover have been generally repudiated. The plaintiff then presses upon us Wolff Packing Co. v. Industrial Court, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280; Tyson v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236, and Williams v. Standard Oil Co., 278 U. S. 235, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596—cases which the defendants distinguish,

because this case does not involve the sale of commodities. The cases of Adkins v. Children's Hospital, 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238, and Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327, if distinguishable, must be on the ground that the use of property was not therein involved. Plaintiff also urges that where there is no monopoly, or chance of monopoly, no use of streets or public rights, our whole scheme of government is opposed to subjecting a person's property to the domination of the state in the vital matters here involved, and propounds the inquiry: If the state can fix the rates for the service of ginning cotton, what service is there that men are free to contract for?

Serious doubt as to the power of the legislature exists by reason of a prior decision of this district denying the power in Chickasha Cotton Oil Co. v. Cotton County Gin Co. [decree reversed 40 F.(2d) 845], and by reason of an opinion of the Supreme Court of the United States in which that court said, concerning this particular statute, that its validity was assumed because both parties conceded it. Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483. For the general public good, the question ought to be settled one way or another, which can only be done by the Supreme Court of the United States. But at the threshhold of the case, we are barred from its consideration, for these reasons:

1. The question of the power of the state to prevent a man building a gin on his own land without the consent of the state, is not in issue. The plaintiff does not want to build a gin. He complains of an order which fixes rates, and nothing else.

2. The power to fix rates is presented by the issues, but the defendants have interposed a plea of estoppel, which is insisted upon. The plaintiff asked for and received licenses to operate six gins in five towns, under this statute. He used this law to keep others out of these towns, theoretically at least. Undoubtedly, men may not take advantage of a law when it suits them, and then attack it when it does not. United Fuel Gas Co. v. Railroad Commission, 278 U. S. 300, 308, 49 S. Ct. 150, 73 L. Ed. 390; Wall v. Parrot Silver & Copper Co., 244 U. S. 407, 37 S. Ct. 609, 61 L. Ed. 1229; Electric Co. v. Dow, 166 U. S. 489, 17 S. Ct. 645, 41 L. Ed. 1088; St. Louis Malleable Casting Co. v. Prendergast Const. Co., 260 U. S. 469, 43 S. Ct. 178, 67 L. Ed. 351; Pierce v. Somerset Railway, 171 U. S. 641, 19 S. Ct. 64, 43 L. Ed. 316; Grand Rapids & Indian Ry. Co. v. Osborn, 193 U. S. 17, 24 S. Ct. 310, 48 L. Ed. 598; Slick v. Hamaker (8 C. C. A.) 28 F.(2d) 103; 12 C. J. 769, et seq. Conceding the force of this doctrine, plaintiff says he is relieved from it by reason of the 1929 amendment and cites Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483. But in that case, the amendment was a nullity. The amendment here, excluding from the statute those who gin for themselves through the instrumentality of a corporation, cannot be treated as a nullity. Whether the mere fact that a statute becomes more burdensome, by reason of a valid amendment, relieves the plaintiff from the estoppel, need not be ruled, because there is no evidence at all that the 1929 amendment hurts the plaintiff; on the contrary the record shows there is no co operative gin at Chandler. And one must be hurt, or in position to be hurt, before he can raise a constitutional question. Hebring v. Lee, 280 U. S. 111, 50 S. Ct. 49, 74 L. Ed. 217, 64 A. L. R. 1430; Williams v. Riley, 280 U. S. 78, 50 S. Ct. 63, 74 L. Ed. 175; Ætna Insurance Co. v. Hyde, 275 U. S. 440, 48 S. Ct. 174, 72 L. Ed. 357.

We conclude the plaintiff is not in position to challenge the statute, and the bill will therefore be dismissed. The restraining order will be dissolved.