## BALTIMORE & O. R. CO. v. LAMBERT RUN COAL CO.*

(Circuit Court of Appeals, Fourth Circuit. August 11, 1920.)

No. 1846.

1. **Commerce ⟨key⟩85—Under power to suspend rules and regulations, Interstate Commerce Commission cannot suspend statute fixing car distribution.**

Under the power given by Transportation Act Feb. 28, 1920, § 402(15), to suspend the operation of rules, regulations, or practices, the Interstate Commerce Commission cannot, in a period of car shortage, suspend the rule prescribed by section 12 as to distribution of cars among coal mines; the expression "rules and regulations" referring to rules, etc., adopted by the commission or railroads, which may be suspended in an emergency.

2. **Commerce ⟨key⟩85—In emergency Interstate Commerce Commission may provide for car distribution contrary to statutory rule.**

Under Transportation Act Feb. 28, 1920, § 402(15), providing that, when the Interstate Commerce Commission is of the opinion that a shortage of equipment or congestion of traffic requires immediate action, etc., it may give directions for priority in transportation, embargoes, etc., the commission, in case of an emergency arising out of shortage of cars, may suspend the rule for distribution of cars to coal mines prescribed by section 12; coal being a necessity, and Congress having vested in the commission the power to suspend, in time of emergency, the rule to be followed in case of ordinary long shortage of equipment.

3. **Commerce ⟨key⟩98—Courts may not annul order of Interstate Commerce Commission on ground it was unwise.**

Where the Interstate Commerce Commission determined that an emergency existed, and under the authority of Transportation Act, § 402(15), suspended the rule prescribed by subdivision 12 for distribution of cars among coal mines, the courts cannot annul the order on the ground that the power conferred upon the commission was unwisely or improvidently exercised.

4. **Constitutional law ⟨key⟩43(2)—One claiming benefit of Transportation Act cannot assert unconstitutionality of limitations.**

Coal company, claiming the benefit of Transportation Act, § 402(12), providing for distribution to mines of cars in time of scarcity, cannot, at the same time, question other provisions of the act giving the Interstate Commerce Commission power in an emergency to suspend the statutory rule without a hearing.

5. **Courts ⟨key⟩101—Order of Interstate Commerce Commission can be enjoined only by three judges.**

Under Act Oct. 22, 1913, Comp. St. § 998, an order of the Interstate Commerce Commission annulling in an emergency the provision of Transportation Act, § 402(12), for distribution of coal cars, can be enjoined only by three judges, one of them being a Circuit Judge, after notice to the commission and to the Attorney General; consequently an injunction against such an order, issued by a District Judge alone, was invalid.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi.

Bill by the Lambert Run Coal Company against the Baltimore & Ohio Railroad Company. From a decree for complainant, defendant appeals. Reversed.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 148, 65 L. Ed. —.

Herbert R. Preston, of Baltimore, Md., and George M. Hoffheimer, of Clarksburg, W. Va. (A. Hunter Boyd, Jr., of Baltimore, Md., on the brief), for appellant.

John A. Howard, of Wheeling, W. Va., and Rush C. Butler and Frank E. Harkness, both of Chicago, Ill., for appellee.

Blackburn Esterline, Sp. Asst. Atty. Gen., and P. J. Farrell, Chief Counsel of Interstate Commerce Commission, of Washington, D. C., amici curiæ.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The complainant, a coal mine served by the defendant railroad company, set out in its bill filed in the circuit court of Marion county, W. Va., that it was suffering continuous loss and damage by reason of the refusal of the defendant in a period of shortage of coal cars to comply with the following provision of section 402, Transportation Act of 1920:

"(12) It shall also be the duty of every carrier by railroad to make just and reasonable distribution of cars for transportation of coal among the coal mines served by it, whether located upon its line or lines or customarily dependent upon it for car supply. During any period when the supply of cars available for such service does not equal the requirements of such mines it shall be the duty of the carrier to maintain and apply just and reasonable ratings of such mines and to count each and every car furnished to or used by any such mine for transportation of coal against the mine. Failure or refusal so to do shall be unlawful, and in respect of each car not so counted shall be deemed a separate offense, and the carrier, receiver, or operating trustee so failing or refusing shall forfeit to the United States the sum of $100 for each offense which may be recovered in a civil action brought by the United States."

Loss and injury was alleged as the result of not counting against mines in the distribution of cars according to the mine ratings all cars to be loaded with railroad fuel coal, thus giving to mines furnishing coal for railroad fuel a preference or priority in the number of cars supplied to the disadvantage of plaintiff's mine and other mines not furnishing railroad fuel coal, or furnishing a less quantity of railroad fuel coal. The resulting disadvantages and losses to the plaintiff are set out in detail in the bill and in affidavits attached thereto. The cars to be thus used for railroad fuel are described as assigned cars.

The plaintiff asked that the defendant be enjoined from continuing its alleged illegal method of distributing coal cars to the mines according to their ratings, without counting against the mine each and every car, including railroad coal cars. The cause was removed to the United States District Court for the Northern District of West Virginia. On the merits, the defense set up in the answer is that the rule and practice of the defendant is authorized and required by the following rules of the Interstate Commerce Commission:

"8. Private cars and cars placed for railroad fuel loading in accordance with the decisions of the Interstate Commerce Commission in Railroad Commission of Ohio et al. v. H. V. Ry. Co., 12 I. C. C. 398, and Traer v. Chicago & Alton Railroad Co. et al., 13 I. C. C. 451, will be designated as 'assigned' cars. All other cars will be designated as 'unassigned cars.'

"9. If the number of assigned cars placed at a mine during any period, as

provided in rule 6, equals or exceeds the mine's pro rata share of the available car supply, it shall not be entitled to any unassigned cars. The assigned cars, together with the mine's requirements, will be eliminated, and the remainder of the available car supply prorated to the other mines, based on a revised percentage by reason of such elimination.

"10. If the number of assigned cars placed at a mine during any period, as provided in rule 6, is less than its pro rata share, based on a revised percentage, it shall be entitled to receive unassigned cars in addition thereto to make up its pro rata share."

It appears from both bill and answer that the United States Railroad Administration abolished the assigned car rule by order of July 6, 1918. After the passage of the Transportation Act on February 28, 1920, the Interstate Commerce Commission continued the order of July 6, 1918, in force, until April 15, 1920, when it restored the assigned car practice, by amending rule 8 and promulgating it in the amended form above quoted.

The amended rule 8, construed in connection with rule 9, is not a reinstatement of the assigned car rule that once existed, namely, that cars assigned for railroad fuel coal were not counted at all, and the mines to which they were assigned received in addition the same number of unassigned cars, according to their rating, as if they had received no assigned cars. It does mean, however, that a mine may receive any number of cars assigned for railroad fuel, although in excess of the number of cars due according to its rating, taking all cars into account, and if the assigned cars so received equal or exceed its pro rata share under its rating it receives no unassigned cars. But the assigned cars so received are eliminated from the entire car supply. This reduction of the number of cars to be prorated manifestly results in not counting each and every car against the mine which receives more cars for railroad fuel than it would be entitled to if all the cars were included in the number to be distributed.

In the order or notice to carriers and shippers promulgating the amended rule, the commission states that in its opinion an emergency existed by reason of the continued shortage of coal cars, the cessation of government control, and the importance of meeting railroad fuel requirements, without the necessity of carriers resorting to confiscation of commercial coal. As authority for this order the commission relies on section 1 of the Interstate Commerce Act, as amended by section 402 of Transportation Act of February 28, 1920. The relevant portions of the statute are:

"(15) Whenever the commission is of opinion that shortage of equipment, congestion of traffic, or other emergency requiring immediate action exists in any section of the country, the commission shall have, and it is hereby given, authority, either upon complaint or upon its own initiative without complaint, at once, if it so orders, without answer or other formal pleading by the interested carrier or carriers, and with or without notice, hearing, or the making or filing of a report, according as the commission may determine: (a) *To suspend the operation of any or all rules, regulations, or practices then established with respect to car service for such time as may be determined by the commission;* (b) to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers of locomotives, cars, and other vehicles, during such emergency as in its opinion will best promote the service in the interest of the public and the commerce of the people,

upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the commission may after subsequent hearing find to be just and reasonable; (c) to require such joint or common use of terminals, including main line track or tracks for a reasonable distance outside of such terminals, as in its opinion will best meet the emergency and serve the public interest, and upon such terms as between the carriers as they may agree upon, or, in the event of their disagreement, as the commission may after subsequent hearing find to be just and reasonable; and (d) *to give directions for preference or priority in transportation, embargoes, or movement of traffic under permits, at such time and for such periods as it may determine, and to modify, change, suspend, or annul them.*"

Attached to the answer is an elaborate written response of the commission to a Senate resolution directing the commission to inform the Senate upon what authority, if any, its order or notice of April 15, 1920, was issued. Therein the commission relied particularly for its authority on the provisions of subdivision 15 which we have italicized.

At the time of the application for the injunction a motion was made to dismiss the bill on the uncontroverted facts appearing in the bill and answer. The motion was denied. The defendant then took the position that, since it appeared that the application was really for an injunction restraining the execution of an order of the Interstate Commerce Commission, it could be heard and determined only by three judges, of whom one at least should be a circuit judge, after five days' notice to the Interstate Commerce Commission and to the Attorney General. This position was also overruled, and the District Judge made an order enjoining the defendant, in any period of coal car shortage, from distributing cars, except in precise accordance with subdivision 12, counting each and every car furnished to a mine against that mine. By its terms this order was limited in its operation to the jurisdiction of the District Court for the Northern District of West Virginia.

[1] We cannot doubt that by subdivision 12 of section 402 the Congress clearly expressed the intention to abolish all preference to mines furnishing railroad fuel coal under the assigned car rule in periods of ordinary car shortage. The count of each and every car required is not a mere independent futile enumeration, but a count of each and every car furnished or used against the mine, to the end that there should be proportional distribution of all available coal cars, resulting in fair and equal opportunity to each mine on the basis of its rating. Before the enactment of the statute the matter had been controlled by rules, regulations, and practices made by railroads, or the government railroad administration, which had been the subject of much controversy. Evidently the Congress, having in view this controversy, after full consideration settled the matter by an imperative enactment against the assigned car rule in times of ordinary coal car shortage. Thus it appears to us the rules of the Interstate Commerce Commission above set out are not in accord with subdivision 12 of the Transportation Act of 1920, standing alone.

The authority given to the commission by (a) subdivision 15 in cases of emergency "to suspend the operation of any or all rules, regulations or practices then established with respect to car service" does not ex-

tend to the suspension of a positive and definite enactment of the statute covering the subject. Rules, regulations, and practices mean the rules, regulations, and practices adopted by the commission or by the railroads in conformity to the act, or not forbidden by it, in contradistinction to the definite enactments of the statute. This appears from subdivisions 11 and 14 of the same section and other portions of the statute. If, therefore, the order of the commission had no other basis than the authority conferred to suspend rules, regulations, and practices it would be without support. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. United Verde Copper Co., 196 U. S. 207, 25 Sup. Ct. 222, 49 L. Ed. 49; Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278; United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563.

[2] The Congress has not, however, conferred on coal mines equality among themselves—the right of each mine in time of coal car shortage to be furnished cars in proportion to mine ratings, without regard to the public welfare and safety. Coal is a public necessity. From many causes crises and emergencies may arise in mine operation, transportation, and unexpected needs of the public, which cannot be anticipated and justly provided for by inelastic legislative enactment. It would be strange indeed if the Congress had guarded the private interests of the mines by an inflexible exactment of equality, lodging nowhere the power to relieve the public against unforeseen conditions which would make rigid proportionate distribution of cars disastrous to the country or to some portion of it. This would be to confer benefits on individuals at the sacrifice of the public safety and welfare.

We think the Congress has clearly conferred on the commission the power to grant relief in such conditions, by providing that—

"Whenever the commission is of opinion that shortage of equipment, congestion of traffic or other emergency requiring immediate action exists in any section of the country the commission shall have and is hereby given authority * * * (d) to give directions for preference or priority in transportation, embargoes or movement of traffic under permits at such time and for such periods as it may determine and to modify, change, suspend or annul them."

The true construction required by the spirit and the letter of the statute is this: Subdivision 12 provides for equality among coal mines in proportion to ratings, in time of the usual long-existing car shortage. But, recognizing the necessity of a degree of flexibility, the Congress conferred upon the commission power, in case of a car shortage which in their opinion was so much beyond the usual as to constitute an emergency, to supplant or modify equality among the mines according to ratings, with preference and priority to such extent as will in its opinion meet the emergency.

All the specific provisions of the statute for equality among designated classes is thus modified by the general provision for their suspension by the commission when they find an emergency requiring it. Our conclusion is that the making and promulgation of rule 8 as amended was clearly within the power of the commission.

[3] The commission having based their order on their opinion that an emergency such as was contemplated by the statute existed, it is

not within the power of the court to annul their order on the ground that the administrative power conferred on the commission was unwisely or improvidently exercised. Interstate Comm. Comm. v. Ill. Cent. R. R., 215 U. S. 452, 478, 30 Sup. Ct. 155, 54 L. Ed. 280; Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

[4] The plaintiff's right to equality in the distribution of coal cars was conferred by the statute. The Congress, in conferring the right, could place upon it any limitations or conditions it saw fit, including the limitation that the right might be suspended by the Interstate Commerce Commission in its discretion without a hearing. The plaintiff, claiming the benefits of the statute cannot assert the unconstitutionality of its limitations. Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187; Grand Rapids & Indiana Ry. Co. v. Osborn, 193 U. S. 17, 24 Sup. Ct. 310, 48 L. Ed. 598. For these reasons the motion to dismiss the bill should have been granted.

[5] Even if the District Court had been right in refusing the motion to dismiss the bill, the order of injunction could not stand, because the execution of the order of the Interstate Commerce Commission could be enjoined only by three judges, one of them being a Circuit Judge, after notice to the commission and to the Attorney General. Act Oct. 22, 1913, Compiled Statutes, § 998.

A decree will be entered, dissolving the injunction and dismissing the bill.

Reversed.