## CLEVELAND & WESTERN COAL CO. v. BALTIMORE & O. R. CO.

(District Court, N. D. Ohio, E. D. October 5, 1922.)

No. 784.

1. **Commerce ⬤89—Distribution of coal cars, primarily question for Interstate Commerce Commission.**

The provision of Interstate Commerce Act, § 1 (12), as amended by Transportation Act of 1920, that every carrier shall count each and every car furnished to or used by any coal mine against such mine, does not determine the question of distribution, but must be read in connection with other language of the paragraph directing just and reasonable distribution of cars to coal mines, and also to maintain and apply just and reasonable ratings of such mines, and whether the method of distribution practiced by a carrier conforms to the statute is a question primarily for the Interstate Commerce Commission.

2. **Commerce ⬤88—Distribution of coal cars, not controlled by special service order.**

Special Service Order No. 25 of the Interstate Commerce Commission, effective September 20, 1922, does not affect the assigned car practice, and leaves the question of proper distribution of coal cars to be governed by Interstate Commerce Act, § 1(12), as amended by Transportation Act of 1920.

3. **Carriers ⬤34—Method of distribution of coal cars not shown to be so clearly unlawful as to warrant preliminary injunction.**

The method of coal car distribution followed by a carrier and its assigned car rule *held* not so clearly in violation of the statute or orders of the Interstate Commerce Commission as to warrant a court in granting a preliminary injunction.

In Equity. Suit by the Cleveland & Western Coal Company against the Baltimore & Ohio Railroad Company. On motion for preliminary injunction. Denied.

C. F. Taplin, of Cleveland, Ohio, for plaintiff.
Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. Defendant is a common carrier by railroad engaged in interstate commerce. Plaintiff owns and operates coal mines, depending on defendant for a supply of cars. The bill alleges that defendant is practicing unfair discrimination in the distri-

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bution of coal cars to the plaintiff's prejudice in violation of paragraph 12, § 1, Interstate Commerce Act (40 Stat. 101), as amended by Transportation Act 1920 (41 Stat. 476), and also in violation of Service Orders Nos. 23 and 25 of the Interstate Commerce Commission. An application for a preliminary injunction to restrain such discrimination is made and has been heard upon affidavits and submitted for decision. Upon due consideration, I am of opinion that the preliminary injunction should not be granted. My reasons for this conclusion will be briefly stated.

1. Defendant, since September 20, 1922, has distributed its coal cars in accordance with Special Service Order, Interstate Commerce Commission, dated April 15, 1920. This order follows and embodies the car service rules approved by the Interstate Commerce Commission as the same existed and were applied prior to federal control and as outlined and defined in Railroad Commission of Ohio v. Hocking Valley Ry. Co., 12 Interst. Com. Com'n. R. 398; Traer v. Chicago & Alton R. Co., 13 Interst. Com. Com'n. R. 451; I. C. C. v. I. C. R. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280. In addition thereto, defendant limits the definition of assigned cars so that it applies only to cars used for its own fuel supply when furnished to mines with which it has a contract to take the entire output for a period of not less than six consecutive months. This service order was later superseded by Special Service Order No. 16, dated September 28, 1920, and this last service order was later, on March 22, 1921, vacated and set aside. In consequence of this action, plaintiff asserts that no service orders are in existence except Orders Nos. 23 and 25. If Special Service Order dated April 15, 1920, or one like it, prescribing a practice of coal car distribution, were now in effect, then this court would be without jurisdiction to hear and determine this application, but it would be necessary to constitute and assemble a special court consisting of three judges, of whom at least one should be a circuit judge. See Lambert Run Coal Co. v. B. & O. R. Co., 258 U. S. ——, 42 Sup. Ct. 349, 66 L. Ed. ——, decided by U. S. Supreme Court April 10, 1922, reversing (C. C. A.) 267 Fed. 776. If, however, there is no special order of the Interstate Commerce Commission on the subject, but merely a car service rule or practice of the defendant, then this court, as now constituted, has jurisdiction to a limited extent. If the statute prescribes a method of distribution, or if there is an order of the Interstate Commerce Commission prescribing a method of distribution, or if there is an established and published car service rule, a suit may be maintained to enjoin a violation thereof. If, on the other hand, the question is merely as to whether or not a rule or practice is in itself unfair or discriminatory, a question then arises calling for the exercise of judgment and discretion which has been vested by Congress in the Interstate Commerce Commission, and the courts will not, until after that Commission has acted and made its finding, take jurisdiction, and then only in the special manner prescribed by statute. See Penna. R. Co. v. Puritan Coal Min. Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075. Inasmuch as plaintiff

contends that service order dated April 15, 1920, and Service Order No. 18, dated September 28, 1920, are no longer in force, I shall dispose of this motion on that assumption. Whether or not the car service regulation was ever made an order of the Interstate Commerce Commission cannot be determined upon the present state of the record, and I shall also assume that, if it was, no such order is now in existence. This application has been heard, and will therefore be decided on the proposition whether or not paragraph 12, § 1, Interstate Commerce Act, as amended by Transportation Act 1920, and Service Orders Nos. 23 and 25, are violated by defendant's practice in counting and distributing cars.

[1] 2. Paragraph 12, § 1, does not, in my opinion, have the effect asserted on behalf of plaintiff. The direction therein contained, to count each and every car furnished to or used by any coal mine, must be read in connection with other language in the paragraph directing every carrier to make just and reasonable distribution of cars for transportation of coal among the coal mines served by it, and also to maintain and apply just and reasonable ratings to such mines. The direction to count cars against the mine, if given the effect for which plaintiff contends, would render superfluous the other language. The direction to count cars against the mine cannot, therefore, be taken as determining the question of distributing cars among the mines. If such were the intention of Congress, then the carrier has no independent duty or power in making distribution of coal cars to coal mines; if it were, the Interstate Commerce Commission likewise would no longer have any power or duty in the matter of determining whether a method of car distribution is just or reasonable. Congress, in my opinion, did not by this paragraph intend to establish a method of distributing coal cars different from that which had previously existed and had been approved by repeated decisions of the Interstate Commerce Commission and the United States Supreme Court. The legislative history of paragraph 7 clearly indicates that Congress was intending merely to put in statutory form the pre-existing practice, and not to declare a new and definitive method of distribution which would supersede the duty to make just and reasonable distribution. The expression "to count each and every car against the mine" is borrowed from previous decisions and regulations of the Interstate Commerce Commission and of common carriers in applying the so-called assigned car rule. Upon the proper construction of this paragraph, the reasoning of Judge Clayton in Corona Coal Co. v. Southern R. Co. (D. C.) 266 Fed. 726, seems to me to be sounder and more persuasive than the views expressed by Judge Woods in B. & O. R. Co. v. Lambert Run Coal Co. (C. C. A.) 267 Fed. 776. Judge Clayton's view also accords with the present view of the Interstate Commerce Commission, which now has pending before it the question of whether the assigned car rule as applied by defendant is a just and reasonable distribution of cars among coal mines. If I am right in this conclusion, then, whether defendant's method of car distribution is unfair or discriminatory becomes a question in the first instance for the Interstate Commerce Commission, and the courts may not intervene until after that Commission

has heard and determined the question. Certainly plaintiff's contention to the contrary is not so clear that it should be adopted as a basis upon which to issue a preliminary injunction which ought not to be issued, and thereby overturn an existing status, unless the plaintiff's right is reasonably clear and free from doubt.

[2] 3. Service Order No. 23, dated July 25, 1922, is suspended and superseded by Service Order 25, effective at midnight September 20, 1922. Plaintiff's suit was not begun until September 23, and the situation existing at that date, if not at the date of the hearing, must control. A careful study of Service Order No. 25 does not disclose any specific order or direction in the matter of car distribution. Paragraph 1 directs that preference and priority shall, in the event the carrier is unable to transport all freight offered, be given to certain commodities, among which is coal. Paragraph 3 authorizes the use of open top cars suitable for the loading and transportation of coal. Paragraph 7 authorizes and directs the carrier, in furnishing coal cars, to give preference and priority in so doing "for such special purposes as may from time to time be specially designated by the Commission or its agent therefor by special priority direction in writing." Plaintiff does not claim under the provisions of this paragraph, nor is any contention made, that defendant is violating any designations for special purposes thereunder to the prejudice of the plaintiff. Paragraph 8 directs the suspension of all rules, regulations, and practices of common carriers in so far as they conflict with the directions made in this order. Plaintiff's claim seems to be that the assigned car rule followed by defendant, and also the assigned car rule existing prior to federal control, embodied in Service Order dated April 15, 1920, are in conflict with the provisions of Special Service Order No. 25, and are suspended by virtue of paragraph 8. I cannot agree to this contention. This order gives priority in the matter of supplying cars, in case of car shortage, for the transportation of certain commodities. It also requires the carriers to give preference and priority in the matter of furnishing cars when the Commission or its agent shall direct cars to be furnished for certain special purposes. Any rule or practice of the carrier which would prevent this being done would be suspended, but it does not appear that the assigned car rule is inconsistent therewith, or that the application of the assigned car rule does or has prevented giving priority in transportation of commodities authorized by paragraph 1 or has prevented compliance with any special designation authorized or provided by paragraph 7. In my opinion, Special Order 25 leaves the assigned car practice and the question of the proper distribution of coal cars just where paragraph 12, § 1, Interstate Commerce Act, and the previous practice and decisions approving it, have placed it. The fact that defendant now submits voluntarily to the limitation placed on cars used for its own fuel so that it applies only to those mines with which it may have contracts to take their entire output during a period of six consecutive months does not change the situation. This limitation is more favorable to other mines than the practice approved by Service Order dated April 15, 1920, or that of the previous practice approved by repeated decisions.

[3] 4. This conclusion renders unnecessary any consideration at this time of Special Service Order No. 23 with its accompanying explanatory resolution dated August 15, 1922. Whether defendant's present practice or the assigned car rule are inconsistent with Order No. 23, as thus explained, is immaterial upon the hearing of this motion. Order 23 had been superseded and suspended three days before this suit was brought. The defendant had also on that date abandoned the practices pursued during the period Order 23 was in force, and had then and has since conformed its practice in the distribution of cars to the assigned car rule as already described. If it has or does in good faith conform thereto, plaintiff's right to an injunction depends exclusively on the proposition already stated and disposed of. The difficulties which defendant experienced prior to September 20, 1922, are fully set forth in the affidavits filed on its behalf. These difficulties were due: First, to the acute condition of the strike of railroad employees; second, to the prolonged strike of coal miners and the resumption of coal mining about August 17; and, third, to special orders giving priority under Service Order No. 23. These conditions are relied upon as excusing, if not justifying, defendant's failure in keeping accurate records and making percentage distribution of coal cars in accordance with the so-called assigned car rule during that period of time. No opinion is expressed as to whether it did, or refrained from doing, during that period, anything to the damage of the plaintiff of which it has a right to complain. The circumstances therein stated repel, however, any inference that defendant's action on September 20, in restoring its method of car distribution was not done in good faith and will not be followed in the future. If defendant does not do so, but begins a discriminatory practice in violation of its car service rules for distributing coal cars, such as was approved by the decisions of the Interstate Commerce Commission and of the United States Supreme Court above cited, a new application for relief can then be made.

Upon the present showing the application for a preliminary injunction is denied.