## FREEMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.
January 30, 1925.)

No. 6565.

**1. Equity ⊜�ா363—Motion to dismiss plaintiff's bill admits allegations thereof.**

Motion to dismiss plaintiff's bill admits allegations thereof.

**2. Commerce ⊜➾8(12)—Hauling coal cars from mine by railroad for own use held "interstate commerce."**

Hauling coal cars for its own use from mine by railroad, which, though intrastate as to its lines and termini, participated in interstate commerce through connection with other railroads, was "interstate commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**3. Commerce ⊜➾89—In absence of Interstate Commerce Commission's suspension of rules respecting distribution of coal cars among mines, statute creates absolute duty, enforceable in first instance by federal equity court.**

In absence of Interstate Commerce Commission's suspension of provision of Transportation Act, § 1, par. 12 (Comp. St. Ann. Supp. 1923, § 8563), making it railroad's duty to count every car furnished to mine against mine, statute creates absolute duty enforce-

able under Elkins Act, § 3 (Comp. St. § 8599), in federal equity court in first instance.

**4. Commerce ⊜➾89—Ordinarily questions of discrimination are initially referable to Interstate Commerce Commission, and not to courts.**

Ordinarily questions of discrimination, including inequitable distribution of cars in times of car shortage, are referable initially to Interstate Commerce Commission, and not to courts, under Transportation Act, § 1, par. 12 (Comp. St. Ann. Supp. 1923, § 8563).

**5. Commerce ⊜➾89—District Court without power to include proviso effecting determination of facts in injunction decree against railroad's discrimination.**

District Court, in restraining discrimination by railroad in furnishing coal cars to mines in violation of Transportation Act, § 1, par. 12 (Comp. St. Ann. Supp. 1923, § 8563), had no power to include proviso that daily orders for cars should constitute daily rating of mine on day on which order was given, since it did not involve construction of statute, but determination from facts whether distribution was unfair, which is for Interstate Commerce Commission in first instance.

**6. Appeal and error ⊜➾171(3)—Principal matter in controversy reviewed on appeal, where technical defect in pleadings was probably inadvertent.**

Principal matter in controversy will be reviewed on appeal, where condition of pleadings, which might under technical rules have precluded review on merits, was probably inadvertent.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Suit by the United States against William R. Freeman and others, as receivers of the Denver & Salt Lake Railroad Company. Decree for plaintiff, and defendants appeal. Decree modified, and, as so modified, affirmed.

Elmer L. Brock, of Denver, Colo. (Milton Smith, Charles R. Brock, and John P. Akolt, all of Denver, Colo., on the brief), for appellants.

Daniel W. Knowlton, Atty. Interstate Commerce Commission, of Washington, D. C. (Granby Hillyer, U. S. Atty., and John A. McCann and Roy H. Blackman, Asst. U. S. Attys., all of Denver, Colo., on the brief), for the United States.

Before SANBORN and LEWIS, Circuit Judges, and FARIS, District Judge.

FARIS, District Judge. Appellee, as plaintiff below, at the request of the Interstate Commerce Commission, brought this action against defendants, as receivers of the Denver & Salt Lake Railroad Company,

to enjoin them from practicing an alleged forbidden discrimination in the furnishing of empty coal cars to two certain coal-mining companies, whereby, it is alleged, three other coal-mining companies in the same field were, by such discrimination, hurt and damaged. This alleged discrimination consisted in the conceded fact that defendants did not count against said two mines the cars furnished for loading thereon fuel coal for the use of the railroad for which defendants are receivers.

Defendants moved to dismiss plaintiff's bill, for that it did not state facts sufficient to entitle plaintiff to any relief in equity. This motion was overruled, and a temporary injunction granted. Thereupon defendants moved to modify the terms of this preliminary injunction by striking therefrom this language and proviso, to wit;

"Provided, that whenever the daily order of any mine for coal cars is for less cars than its daily rating in cars, said daily order shall be considered to be the daily rating of such mine for the purpose set forth in this paragraph on the day for which such order was given."

This motion of defendants being overruled, such further proceedings were had in the case as resulted in a perpetual injunction. Whereupon defendants in conventional mode appealed. Upon this appeal it is assigned as error that:

(a) The District Court erred in granting the preliminary injunction and in denying the motion to dismiss the bill of complaint for the reason that it appeared from the bill of complaint that the practice complained of had to do with the assignment of coal cars to certain mines for railway fuel purposes on the Denver & Salt Lake Railroad, which is located wholly within the state of Colorado, and which would not constitute interstate commerce, so as to render the appellants subject to the Interstate Commerce Act in so far as the transportation of its own railway fuel is concerned.

(b) Paragraph 12 of section 1 of the Interstate Commerce Act, as amended (Comp. St. Ann. Supp. 1923, § 8563), is not absolute, and therefore the court should not have taken jurisdiction of this case until the matter in controversy was first presented to, and passed upon by, the Interstate Commerce Commission.

(c) The court erred in incorporating in the preliminary injunction, and in denying the motion of the appellants to eliminate therefrom, the following proviso in subdivision (c) of the preliminary injunction, to wit:

"Provided that, whenever the daily order of any mine for coal cars is for less cars than its daily rating in cars, said daily order shall be considered to be the daily rating of such mine for the purpose set forth in this paragraph on the day for which such order was given."

[1, 2] The allegation made in plaintiff's bill, that coal cars loaded with coal in the state of Colorado, on the lines of the Denver & Salt Lake Railroad, a railroad wholly intrastate, as to its lines and termini, are transported, with the coal thereon, in interstate commerce, is perforce the motion to dismiss, admitted. The fact thus admitted, constitutes interstate commerce. United States v. Union Stockyards, 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226. As a corollary to this view, and to an extent upholding it, the case of Interstate Commerce Commission v. Illinois Central R. R. Co., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280, held that the equipment of an interstate railroad, including cars for the transportation of its own fuel, are instruments of interstate commerce, and subject to the control of the Interstate Commerce Commission. Obviously, however, some question arises whether the fuel cars of an intrastate railroad are so far instrumentalities of interstate commerce as to cause them to fall within the regulatory authority of the Interstate Commerce Commission. It is correctly conceded by counsel for defendants that the Denver & Salt Lake Railroad, while wholly intrastate as to its lines and termini, is yet, as to its ordinary commercial business, subject to the control of the Interstate Commerce Commission, because, through its connection with other railroads at Denver, it participates in interstate commerce. Much of the coal hauled by this railroad from each of the five mines mentioned is thus transported in interstate commerce. It would then seem to follow that, if any of these mines are prevented by discriminatory acts of defendants, through diversion of equipment unlawfully, from shipping as much coal in interstate commerce as otherwise they could and would do, such discrimination obviously casts a burden upon interstate commerce, in such wise as, other things being equal, to bring the matter of such discrimination within the regulatory power of the Interstate Commerce Commission and in a proper case within the jurisdiction of the federal courts.

We conclude that this contention should be disallowed, both for the reasons given in the Union Stockyards Case and the Illinois Central Railroad Case, both, supra; as well as for the construction we are constrained

to give to paragraph 12 of section 1 of the Interstate Commerce Act, to which we shall hereafter refer more at length.

[3] The next point urged as error, simply stated, is this: Did the District Court have jurisdiction to entertain this controversy, before and until the Interstate Commerce Commission had, upon a hearing, passed upon the question whether the acts of defendants constituted actionable discrimination? Defendants strenuously contend that the District Court had no such jurisdiction; plaintiff contends contra.

Authority is given to the Interstate Commerce Commission by section 3 of the Act of February 19, 1903, commonly called the "Elkins Act" (32 Stat. 847, Comp. St. § 8599), to apply for relief directly to the District Courts of the United States sitting in equity. This provision so far as pertinent reads thus:

"That whenever the Interstate Commerce Commission shall have reasonable ground for belief that any common carrier is engaged in the carriage of passengers or freight traffic between given points at less than the published rates on file, or is committing any discriminations forbidden by law, a petition may be presented alleging such facts to the Circuit Court of the United States sitting in equity having jurisdiction."

But, this statute notwithstanding, the defendants contend that it is the duty of the Interstate Commerce Commission to determine primarily whether there exists any discrimination forbidden by law, and that till such determination is had a District Court has no jurisdiction. At least, defendants contend (even if their contention is not, as to the above statute, a thoroughgoing one) that this statute does not apply to the state of facts in the instant controversy.

Plaintiff meets this objection by a reliance upon the language of paragraph 12 of section 1 of the Transportation Act which was subsequently enacted. This paragraph reads thus:

"It shall also be the duty of every carrier by railroad to make just and reasonable distribution of cars for transportation of coal among the coal mines served by it, whether located upon its line or lines or customarily dependent upon it for car supply. During any period when the supply of cars available for such service does not equal the requirements of such mines it shall be the duty of the carrier to maintain and apply just and reasonable ratings of such mines and to count each and every car furnished to or used by any such mine for transportation of coal against the mine. Failure or refusal so

to do shall be unlawful, and in respect of each car not so counted shall be deemed a separate offense, and the carrier, receiver, or operating trustee so failing or refusing shall forfeit to the United States the sum of $100 for each offense, which may be recovered in a civil action brought by the United States." 41 Stat. 476.

It is contended by plaintiff that the language of the above excerpt from the statute, which makes it the duty of the railroad "to count each and every car furnished to, or used by, any such mine · for transportation of coal against the mine," creates an absolute duty, and furnishes a defined course of action, for the failure to observe which duty resort may be had, in the first instance, to the federal courts, under the provisions of section 3 of the Elkins Act, supra.

Upon this point the courts are seemingly not in accord. Cf. Cleveland, etc., Coal Co. v. Baltimore, etc., R. R. Co. (D. C.) 283 F. 995; Corona Coal Co. v. Southern Ry. Co. (D. C.) 266 F. 726; Baltimore, etc., R. R. Co. v. Lambert Run Coal Co. (C. C. A.) 267 F. 776. This lack of agreement may be merely apparent, rather than real, because it must be regarded in the light of the specific questions up for judgment in each case. The legislative history of the amendment made in 1920 (41 Stat. 476) lends color to the conclusion that this amendment only crystallized into written law a rule long announced by the repeated rulings of the Interstate Commerce Commission. And so a number of courts have ruled. Cleveland, etc., Coal Co. v. Baltimore, etc., R. R. Co. (D. C.) 283 F. 995; Baltimore, etc., R. R. Co. v. Lambert Run Coal Co., 267 F. loc. cit. 779. This legislative history aids materially the true construction of this paragraph; for, if Congress but enacted into a statute a rule of the Interstate Commerce Commission, infraction of which had long been held to constitute a violation per se of the statutory inhibition against discrimination, then it follows that no reason exists to go before the Interstate Commerce Commission in order to have again determined the question whether an act long held to be a discrimination is in fact a discrimination.

Moreover, the language of paragraph 12 of section 1 explicitly makes it the duty on the part of the carrier to count against the mine each and every car furnished to such mine for the transportation of coal, in times of car shortage. This duty, it is true, is not absolute, in the sense that the Interstate Commerce Commission may not, by order, under other provisions of the "Transportation Act," suspend the action of paragraph

12, supra, in cases of emergency. Baltimore, etc., R. R. Co. v. Lambert Run Coal Co., supra; Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U. S. 377, 42 S. Ct. 349, 66 L. Ed. 671. But it is absolute in the sense that, absent such order, the provision stands as an affirmative pronouncement of Congress upon the subject. Here, in the case at bar, there has been no suspension of this provision by any order of the Interstate Commerce Commission, but, on the contrary, it is conceded by the pleadings that the action at bar was brought "at the request of the Interstate Commerce Commission."

It is also true that paragraph 12, supra, requires a just and reasonable distribution of such cars and a just and reasonable rating of such mines. So much, standing alone, might be referable to the administrative action of the Interstate Commerce Commission. But thereafter the paragraph provides, in effect, that all cars shall be counted against the mine, and makes a failure so to do so far unlawful as to provide for, and permit the recovery by the United States of a penalty of $100 for each car not so counted. In other words, this statute explicitly sets out one act, failure to observe which constitutes discrimination, absent exercise of the power of suspension, which by other provisions of the law is given to the Interstate Commerce Commission.

[4] It may be conceded that ordinarily questions of alleged discrimination, including inequitable and unfair distribution of cars in times of car shortage, are referable initially to the administrative powers and jurisdiction of the Interstate Commerce Commission, and not to the courts; but all of the cases which have been called to our attention were either ruled before the enactment of paragraph 12 of section 1 of the Transportation Act, which amended the Interstate Commerce Act, or they dealt with matters requiring investigation of the facts as the basis of the order to be made.

Here the situation presented is modified by the facts that (a) this action was begun by the Attorney General, for the United States, at the request of the Interstate Commerce Commission; (b) the precise thing complained of, to wit, a failure to count against the mine, pending an existing car shortage, all cars furnished to the mine, is by the pleadings conceded; and (c) the rule requiring such counting is made by an affirmative enactment of the Congress, which is valid and binding till suspended by action of the Interstate Commerce Commission, and no such action has been had in this case. These considerations in our view serve to differentiate this case from all other cases which have been called to our attention. This language of paragraph 12, supra, does not except cars furnished to a given mine for fuel for the railroad's own use. In fact, such an exception would inevitably result in that very discrimination which the act, inter alia, was intended to prevent.

The view that paragraph 12, supra, provides an absolute rule, compliance with which may be enforced in a federal court in equity, without resort primarily to the Interstate Commerce Commission, was, in effect, upheld in the case of Baltimore & Ohio R. R. Co. v. Lambert Run Coal Co., supra. For it was therein ruled that, while standing alone, it was absolute, it was yet capable of being suspended by order of the Commission. Aside from the holding in the above case, that the statute fixed an absolute rule, we have found no case directly in point. Others have been found and cited by counsel, which, by large inference, sustain the view we here take. It follows that the contention that the District Court had not initial jurisdiction, ought to be disallowed.

[5] Upon the third point mooted, that the District Court had no power to embody in the decree the proviso contained in the injunctive order, to the effect that daily orders for cars shall be held to constitute the daily rating of a mine, on the day for which such order was given, we find ourselves constrained to agree with the contention of appellants. So much, we think, arises as a necessary corollary from what has been said already, in discussing the right of the plaintiff to go initially into a District Court. Whether such distribution of coal cars, as required by this proviso, is inequitable, unfair, and unjust, involves the facts, the circumstances, and the situation. These things, as forecast, are referable initially to the Interstate Commerce Commission and not to a District Court. The point involves, not the construction of a statute, not the crystallization of a custom into a law, but the determination, from the facts presented, of whether the distribution, perforce the rule of the proviso, is inequitable, unjust, or unfair.

[6] We pass over the point, nowhere made, however, in the briefs, but obvious upon the record, that this rule of distribution, enjoined by the proviso, had been the rule of distribution used by defendants themselves, before this action was begun and that the injunctive order in no wise al-

tered, but merely continued this rule. But since this technical condition of the pleadings may well be due to inadvertence, and since this proviso is one of the chief bones of contention on which issue was joined here, we deem it proper to rule it, regardless of technical rules of pleading, which properly might preclude examination of it upon the merits.

It follows, then, that the decree for a perpetual injunction, as entered below, should be modified, by striking therefrom the proviso mentioned herein, and, as modified, that such decree should be affirmed; and so it is ordered.