PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. WHITE STAR
BUS LINE, INC., Defendant and Appellant. *

No. 5514. Argued June 10, 1932.—Decided May 31, 1933.

---

\* NOTE.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this
decision was reversed and the case remanded (75 F. (2d) 889); certiorari denied (296.
U.S. 606).

*Guerra-Mondragón & Soldevila* for appellant. *Charles E. Winter, Attorney General,* and *M. Rodríguez Serra, Assistant Attorney General,* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

The facts of this case are undisputed. They show that on the 12th of April, 1927, it was enacted or ordained by the Public Service Commission of Puerto Rico, as follows:

"Section 1.—That subject to the limitations, conditions, and restrictions that are now, or may hereinafter be imposed by law, and to those hereinafter specifically set forth, exclusive authority for a period of twelve (12) years from the date of the approval by the Governor of Porto Rico of this franchise is hereby granted to the White Star Bus Line, Inc., a corporation, hereinafter called the grantee, to establish, maintain and operate a motor-bus service for hire for the transfer and transportation of passengers between and within the municipalities of San Juan and Río Piedras and inter-

mediate points. All routes for the service herein authorized shall be fixed by the Public Service Commission of Porto Rico after a hearing accorded to the grantee. The said authorization shall extend to and include all operations of whatever nature that may be necessary for the successful and economical operation of said motor-bus service within the territory above set out; Provided, That the exclusive authority herein granted shall apply to local transportation wholly within and between the municipalities of San Juan and Río Piedras, only, and shall not be construed to prohibit the granting of authority to other public-service companies to operate motor busses on routes from points in municipalities other than San Juan and Río Piedras passing through, into or out of the said municipalities of San Juan and Río Piedras.''

It is, therefore, evident that the existence, authority, and life of this corporation proceeded from the Public Service Commission.

Section 2 provided:

''During the life of this franchise, the grantee hereby agrees to pay annually to the Treasurer of Porto Rico, on the 15th day of January of each year, a royalty for this franchise as follows: during the first, second, third and fourth years of the franchise, the amount of the royalty shall be four (4) per cent of the annual gross operating revenues of the grantee; during the fifth, sixth, seventh and eighth years, the amount shall be five (5) per cent of said annual gross operating revenues; and during the ninth, tenth, eleventh, and twelfth years, the amount of said royalty shall be six (6) per cent of said annual gross operating revenues; Provided, however, That the Public Service Commission shall amend and adjust the percentage of said royalty if after a term of not less than one year of operation of the business of the grantee, and after application by the grantee or by the Commission on its own motion, and hearing by the Public Service Commission, it should be found justified to so amend and adjust the percentage of said royalty so as to allow the grantee herein a fair and reasonable return on the investment.''

It seems to be conceded by the parties that the first year of the operations of the White Star Bus Line, Inc., began on the 15th day of January, 1928, and that the payment of the amount agreed upon in said section 2 was due, according to the terms of the franchise, on the 15th day of January, 1929.

On that day the company made an application to the Public Service Commission to modify the terms of the royalty to be paid by the said company. On the 30th of July, 1929, the White Star Bus Line, Inc., presented a complaint in injunction against Juan G. Gallardo to attempt to prevent him, as Treasurer of Puerto Rico, from recovering the amount of royalty set up in the franchise. Upon this state of affairs, the People of Puerto Rico presented the complaint in this case to recover from the defendant the sum of $45,575.28 as the amount due from the gross receipts of the said company during the year which ran from January 15, 1928. The District Court of San Juan, after an answer and a hearing and other proceedings, rendered judgment in favor of the People of Puerto Rico for the amount claimed, with interest.

One of the principal contentions in this case is the interpretation to be put upon section 2 of the said franchise, whereby the Public Service Commission agreed to consider the possible reduction of the amount of royalty to be paid by the appellant. In its brief the appellant lays some stress upon the fact that the last words of section 2 were inserted in the franchise after the said company had refused to accept the franchise as drafted by the Public Service Commission and other matters prior to the actual issuance of the said franchise. Whether the franchise be considered as a contract or not, we think all the preliminary agreements and discussions became merged in the document as finally issued. The appellant in its eighth assignment of error attempts to maintain that some of the previous conversations were part of the history of the granting of the franchise, but we can not see that what the propounder of the amendment said with regard to its interpretation is comparable with legislative history. In another connection the argument of the appellant on pages 11 and 12 of the brief would tend to support these views.

. The district court first considered the defense raised by the appellant that the injunction presented by it was a suit pending between the same parties and for. the same cause of action. The court overruled this defense on the ground that the suit brought against Gallardo was one thing and a suit instituted by the People of Puerto Rico was another. In other words, that the parties opposite to the White Star Bus Line, Inc., in each of the two suits were not the same and, therefore, it was not the same cause of action. We can imagine cases where for certain purposes perhaps the Treasurer and the People of Puerto Rico might be considered to be the same party, but we do not necessarily disagree with the ruling of the court below. What we do hold is that the attempt by the People of Puerto Rico to recover the amount alleged to be due by the corporation was not in any sense the same suit or kind of suit that the appellant tried to introduce in order to prevent a collection. A suit to recover and another to prevent a recovery are necessarily distinct. It would be absurd to suppose that by reason of an injunction filed against him, the Treasurer of Puerto Rico could not file his own suit to recover the amount alleged to be due. Otherwise, the Treasurer might be delayed indefinitely in his recovery. He was not bound to file a cross complaint in the other suit although we think that to defeat the action of the plaintiff he might have done so. This was made the subject of the sixth assignment of error.

The appellee discusses the fourth assignment of error as being the most important. It is as follows:

"The district court erred in not holding that section 53 of the Public Service Act (wherein authority was given to the Public Service Commission to impose royalties and from which the authority was supposed to arise to demand the royalty provided for in section 2 of the franchise along with the said section itself) contained vices of nullity and unconstitutionality and was in opposition to section 3 of the Organic Act."

As pointed by the appellee, the title of Act No. 70 of 1917 (Session Laws, (II) p. 432), is as follows:

"Defining Public Service Companies, and providing for their regulation; prescribing, defining, regulating, and limiting their rights, powers and duties; prescribing and defining the powers and duties of the Public Service Commission and its officers, prescribing and regulating the practice and procedure before such Commission and upon appeal, and for other purposes."

Sections 52 and 53 of Act No. 70 provide:

"Section 52.—*Grants to be made.*—The commission shall have power to grant franchises, rights, privileges or concessions for public or quasi-public purposes, including the right to use, or cross roads, highways and public streams, and to grant franchises, rights, privileges or concessions for the use of public waters for public or private purposes; Provided, That the commission shall not have the power to grant the title or use of public lands or property, or to grant franchises, rights, privileges or concessions for private purposes, except for the use of public waters, without the approval of the Legislature.

"Section 53.—*Conditions and Classes of Concessions.*—The commission shall have full power to determine all of the terms and conditions under which such franchises, rights, privileges or concessions shall be granted, and to determine in what classes of cases such grants shall be made, and shall have the power to exact royalties for the exercise thereof."

Section 3 of the Organic Act is as follows:

"That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico.  .  .  .  ."

Even if there were no other provision in the Organic Act, we seriously question whether there would be anything in this act which would be a limitation on the power of the Legislature to delegate authority in the Public Service Commission to grant franchises and to fix the terms thereof.

However, section 38 of the Organic Act provides in part as follows:

"That all grants of franchises, rights, privileges, and concessions of a public or quasi public nature shall be made by a public service commission consisting of a public service commissioner, who shall be the president of the said commission, and two associated commissioners, to be appointed by the governor with the advice and consent of the senate . . . . . The said commission is empowered and directed to discharge all the executive functions relating to public service corporations heretofore conferred by law upon the executive council and such additional duties and functions as may be conferred upon said commission by the legislature. Franchises, rights, and privileges granted by the said commission shall not be effective until approved by the governor and shall be reported to Congress, which hereby reserves the power to annul or modify the same.

"  *      *      *      *      *      *      *

"The legislative assembly of Porto Rico is hereby authorized to enact laws relating to the regulation of the rates, tariffs, and service of all public carriers in Porto Rico, and the public service commission hereby created shall have power to enforce such laws under appropriate regulation."

As the appellee points out, the said section 38 only has the limitations expressed therein. It is perfectly clear to our minds that when the Public Service Commission was given power to grant franchises, the right to fix the terms thereof was necessarily and inevitably implied.

We rather question whether the royalty imposed is a tax in the strict sense of the word, but supposing there is an exercise of the taxing power, it is clear that the Legislature, and especially the Congress, would have the right to grant the power to impose such a tax on a company deriving its authority from a franchise of the Public Service Commission. We have the idea moreover that the royalty to be paid by the White Star Bus Line, Inc., was rather in the nature of a rental or other consideration for the granting of the franchise, and would not be subject to the restrictions that

might arise from the standpoint of considering this royalty as a form of taxation. The White Star Bus Line, Inc., of its own volition agreed to pay this consideration for the granting of the concession.

The District Court of San Juan held that the defendant was estopped from asserting the unconstitutionality of the second section of the franchise which it had accepted and was enjoying. The theory is that a person who has availed himself of an unconstitutional act can not subsequently aver its unconstitutionality as a defense. *Daniels* v. *Tearney,* 102 U. S. 415, and cases cited on page 421; *Grand Rapids, etc., Co.* v. *Osborn,* 193 U. S. 17. While we do not rely on it, we are disposed to agree with this principle, and this disposes of the fifth assignment of error.

The sixth assignment of error was that the District Court of San Juan had no right to render a judgment while a petition was pending before the Public Service Commission to amend and adjust the amount of the percentage of the gross receipts that the defendant was obliged to pay. We are of the opinion that despite the pendency of this application for a reduction, supposing it could be made, that the People of Puerto Rico had a right nominally to recover the price fixed in the franchise, and any reduction made by the Public Service Commission could be made the subject of some independent proceeding or perhaps as a set-off in subsequent years. We question, however, whether under the terms of the franchise the Public Service Commission, under any circumstances, had the power or authority to reduce the royalty for the first year. Indeed the District Court of San Juan held that whatever reduction might be made by the Public Service Commission, it could not apply to the first year as it would be to give the ruling a retroactive effect.

As against the second assignment of error we agree with the court that the first year had absolutely expired. In point of fact, the year ended on the 14th day of January, 1929, and not on the 15th. The full year became completed when the

366th day had passed, 1928 being a leap year. A clearer vision of this appears when one considers a whole natural year. A franchise granted on the first of January would expire on the 31st of December and not on the 1st of January. This is true although the franchise itself fixed the payments to be made after the expiration of one year or on the 15th of January of each year.

Under the third assignment, which is as follows, the appellant has presented a great deal of argument:

"The court erred in not deciding that the defendant, as a public service corporation, has the right to a reasonable benefit on its invested capital and in denying this right by reason of the judgment."

As one may see from the franchise and from our decision in *Santiago* v. *Porto Rico Public Service Commission et al.*, 37 P.R.R. 467, the White Star Bus Line, Inc., was granted a monopoly over the streets and roads lying between San Juan and Río Piedras. It was an exclusive right. For this the People of Puerto Rico, through the Public Service Commission, demanded compensation. The citations of the appellant by no means convince us that a public service corporation is bound to receive a profit in the first year of its operations. On the contrary, we think the general rule would be otherwise. Where a right, and especially an exclusive right, is granted, the profit of a public service corporation may be expected to come from its operations taken over a series of years. Before the expiration of a time longer than one year, it would be impossible to say that the corporation had been deprived of its property without due process of law, because the subsequent years could readily more than make up any lack of supposed gains for the first year. Take, for example, *United Railways and Electric Company of Baltimore* v. *West, Chairman et al.*, 280 U. S. 234, cited by appellant. A rate of return was a part of the matter considered in that case. Evidently, in the court below one of the parties had discussed that supposed inadequate rates had been in existence

for a long time and should continue.   Part of the argument of the appellant was:

"By enjoying inadequate rates too long the public can not acquire a right to continue such rates still longer.   On the contrary, under the decisions of this court, the question is, not whether the utility has delayed too long before attacking a confiscatory rate, but whether it has waited long enough to make it reasonably clear that the rate will actually prove to be confiscatory. *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Pennsylvania R. Co.* v. *Public Service Comm'n*, 126 Md. 59."

It is thus evident that the state of the earnings or losses of the company for the first year is not a criterion or a basis for the attempt to set up a confiscatory rate.   The appellant discusses the provisions of the second section of the franchise as if it were absolutely obligatory on the commission to make the adjustment in the first year.   We have read the words repeatedly and an absolute obligation does not exist. At the utmost there would be a sound discretion in the Public Service Commission to make a deduction if that body thought it advisable, reasonable and just.   The obligation on which the appellant insists so strongly did not exist.   Necessarily, power must reside somewhere and it would take a strong abuse of power before we should say that the Public Service Commission, on the showing made by the defendant, was bound to reduce the rate of the royalty.

Under these considerations it became unimportant that the court below refused to permit evidence to show the total losses of the company in its first year.   The error, if any, was harmless.

The judgment should be affirmed.

ON MOTION FOR REHEARING
(July 19, 1933)

MR. JUSTICE WOLF delivered the opinion of the Court.

We quite agree with the appellant that the Public Service Commission in its discretion might have reduced the royalty

that the White Star Bus Line had to pay for the first year of its operations, but we are thoroughly convinced that the commission was not bound to do so and that the White Star Bus Line had no right to exact it. From our original opinion it sufficiently appears that a profit for the first year was hardly to be expected and the company bound itself to pay 4 per.cent of its gross income. In our previous opinion there may be errors of conception or perhaps some mistakes, but the fundamental question decided is that the company was not necessarily entitled to a rebate for the first year of its operations.

The appellant also insists that this Court was mistaken in not deciding that there was a previous action pending between the same parties. Of course it makes no difference that the court below thought that the parties in the two suits were not the same, the People of Puerto Rico in one case and the Treasurer in another. We see no reason to change our idea that a suit to recover taxes due is not the same cause of action as an injunction to prevent the Treasurer from recovering them. The plea of another suit pending for the same cause of action as we understand it generally presupposes a previous action by the same plaintiff. The idea is that a sort of estoppel exists against the plaintiff who began the previous action and hence that the second action may not avail him while the former one is pending. Going then to the gist of the matter, however, we are thoroughly convinced that the previous suit filed by the White Star Bus Line would never be an impediment against the Treasurer until the court had actually in the previous suit of injunction attempted to prevent the Treasurer from proceeding.

On the question of whether the Legislature could delegate to the Public Service Commission the power to fix the terms and conditions of the franchise and to impose a tax or royalty to the company, we have nothing to add to our original opinion. We also think that the court below was not mis-

taken in saying that an estoppel arose, but we lay no stress upon the point.

The appellant also draws attention to the fact that we were mistaken in saying that the first year of the operations of the company began on the 15th of January when according to the defendant it was the first day of January. We do not see the importance of the mistake, if it was a mistake, and the discussion in our original opinion proceeded from something contained in the briefs of the parties.

Following the appellant, we can not understand how the Circuit Court of Appeals would have any difficulty over the fact that we did not decide clearly whether the appellant had a right to ask for a reduction after the expiration of the first year. We are still somewhat inclined to think that the White Star Bus Line had no such legal right after the expiration of the first year, or even before, but if we are wrong about this we can not see that the appellate court will have any difficulty. Perhaps the opinion was guilty of other mistakes of expression, but we are convinced that the fundamental conclusion was correct, and the motion for reconsideration will be denied.