EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WHITE STAR BUS LINE, INC., demandada y apelante.

No. 5514.  *Sometido:* Junio 10, 1932.  *Resuelto:* Mayo 31, 1933.

*Guerra-Mondragón & Soldevila,* abogados de la apelante; *Hon. Procurador General Charles E. Winter* y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Los hechos de este caso no están en disputa. Demuestran que el 12 de abril de 1927 la Comisión de Servicio Público de Puerto Rico proveyó u ordenó lo que sigue:

"Sección 1.—Que con sujeción a las limitaciones, condiciones y restricciones que ahora o en lo sucesivo imponga la ley, y a las que

aquí se fijarán específicamente, por la presente se concede autoridad exclusiva por un período de doce años a partir de la aprobación de esta franquicia por el Gobernador de Puerto Rico, a la White Star Bus Line, Inc., una corporación, que en adelante será designada como la concesionaria, para establecer, mantener y explotar un servicio de autobuses de alquiler para trasladar y transportar pasajeros por y entre los municipios de San Juan y Río Piedras y puntos intermedios. Todos los itinerarios para el servicio aquí autorizado serán fijados por la Comisión de Servicio Público de Puerto Rico después de oír a la concesionaria. La referida autorización se extenderá y abarcará todas las operaciones, de cualquiera índole, que sean necesarias para que la explotación de ese servicio dentro del territorio anteriormente descrito resulte provechosa y económica; *Disponiéndose,* que la autoridad exclusiva que por la presente se confiere sólo será aplicable a la transportación local enteramente dentro de los municipios de San Juan y Río Piedras, y no será interpretada en el sentido de prohibir el que se conceda permiso a otras compañías de servicio público para explotar autobuses por rutas desde puntos en otros municipios que no sean San Juan y Río Piedras, atravesando dichos municipios de San Juan y Río Piedras o yendo y saliendo de ellos.''

Es, pues, evidente que la existencia, autoridad y vida de esta corporación emanaron de la Comisión de Servicio Público.

En la sección 2 se dispuso:

''Durante la vigencia de esta franquicia, la concesionaria por la presente se compromete a pagar anualmente al Tesorero de Puerto Rico, el 15 de enero de cada año, una regalía por esta franquicia, como sigue: Durante los años primero, segundo, tercero y cuarto de la franquicia, el importe de la regalía será el cuatro (4) por ciento de los ingresos brutos anuales que en su negocio tenga la concesionaria; durante los años quinto, sexto, séptimo y octavo, el importe será el cinco (5) por ciento de tales ingresos brutos; y durante los años noveno, décimo, undécimo y duodécimo, el importe de tal regalía será el seis (6) por ciento de dichos ingresos brutos; *Disponiéndose, sin embargo,* que la Comisión de Servicio Público enmendará y fijará el tanto por ciento de dicha regalía si después de un plazo no menor de un año del funcionamiento del negocio de la concesionaria, y previa solicitud de ésta o a iniciativa propia de la Comisión y previa audiencia por la Comisión de Servicio Público, se hallare justificada para

enmendar y fijar el tanto por ciento de 'dicha regalía a fin de permitir a la concesionaria una ganancia razonable sobre su inversión.''

Parece admitirse por las partes que el primer año de las operaciones de la White Star Bus Line, Inc., comenzó el quince de enero de 1928, y que el pago de la suma estipulada en la referida sección 2 vencía, de acuerdo con los términos de la franquicia, el 15 de enero de 1929. En ese día la compañía presentó solicitud a la Comisión de Servicio Público para que ésta modificase los términos de la regalía a ser pagada por aquélla. El 30 de julio de 1929 la White Star Bus Line, Inc., presentó demanda de *injunction* contra Juan G. Gallardo para tratar de impedir que él, en su carácter de Tesorero de Puerto Rico, cobrara el importe de la regalía fijado en la franquicia. Así las cosas, el Pueblo de Puerto Rico presentó la demanda en este caso para cobrar a la demandada la suma de $45,575.28 como lo adeudado por concepto del ingreso bruto de la referida compañía durante el año que comenzó el 15 de enero de 1928. La Corte de Distrito de San Juan, después de presentarse contestación y de celebrarse una vista y otros procedimientos, dictó sentencia a favor del Pueblo de Puerto Rico por la cantidad reclamada, más intereses.

■ Una de las contenciones principales en este caso es la interpretación que ha de dársele a la sección 2 de la aludida franquicia, por virtud de la cual la Comisión de Servicio Público convino en considerar la posible reducción del importe de la regalía a ser pagado por la apelante. En su alegato la apelante hace algún hincapié sobre el hecho de que las palabras finales de la sección 2 fueron insertadas en la franquicia después que la compañía se había negado a aceptar la franquicia tal como había sido redactada por la Comisión de Servicio Público, y luego de otras cuestiones previas a la expedición material de la franquicia. Ya sea ésta considerada como un contrato o no, creemos que todos los convenios y discusiones preliminares se fundieron en el documento tal cual fué finalmente otorgado. La apelante en su octavo señalamiento de error trata de sostener que algunas de las con-

versaciones preliminares formaban parte de la historia de la concesión de la franquicia, pero no podemos ver que lo que el proponente de la enmienda dijo con respecto a su interpretación sea comparable a la historia legislativa. Bajo otro aspecto, la argumentación que la apelante hace en las páginas 11 y 12 de su alegato, tiende a sostener estos puntos de vista.

La corte de distrito primeramente consideró la defensa suscitada por la apelante al efecto de que el *injunction* por ella presentado era un pleito pendiente entre las mismas partes y por la misma causa de acción. La corte desestimó esta defensa por el fundamento de que el pleito entablado contra Gallardo era una cosa y un pleito incoado por el Pueblo de Puerto Rico otra. En otras palabras, que las partes adversas a la White Star Bus Line, Inc., en cada uno de los dos pleitos no eran las mismas y, por consiguiente, que no se trataba de la misma causa de acción. Se nos pueden ocurrir casos en que para ciertos fines quizá el Tesorero y El Pueblo de Puerto Rico hubieran de ser considerados como la misma parte, pero no estamos necesariamente en desacuerdo con lo resuelto por la corte inferior. Lo que sí resolvemos es que la tentativa por El Pueblo de Puerto Rico para recobrar la cantidad que alegó adeudarle la corporación no era en sentido alguno el mismo pleito o clase de pleito que la apelante trató de establecer a fin de impedir el cobro. Un pleito para cobrar y otro para impedir que se cobre son necesariamente distintos. Sería absurdo suponer que con motivo de un *injunction* radicado contra él, el Tesorero de Puerto Rico no pudiera radicar su propio pleito a fin de cobrar la cantidad que se alegó adeudársele. De otro modo, el Tesorero podría ser demorado indefinidamente en su cobro. Él no estaba obligado a radicar una contrademanda en el otro pleito, aunque creemos que con el propósito de destruir la acción de la demandante pudo haberlo hecho. Esto se hizo objeto del sexto señalamiento de error.

■■ El apelado discute el cuarto señalamiento de error como el más importante. Es así:

"Cometió error el tribunal de distrito al no declarar que el artículo 53 de la Ley de Servicio Público de Puerto Rico, por el que se pretende dar facultad a la Comisión de Servicio Público para imponer regalías y del que se pretende hacer derivar poder o facultad para exigir la regalía dispuesta en la sección 2 de la franquicia, al igual que esa misma sección, tienen vicio de nulidad e inconstitucionalidad por violar el artículo 3 de la Ley Orgánica."

Según indica el apelado, el título de la Ley No. 70 de 1917 (Leyes de ese año, tomo II, página 433) lee así:

"Definiendo las compañías de servicio público y proveyendo lo necesario para su reglamentación; prescribiendo, definiendo, reglamentando y limitando sus derechos, facultades y deberes; prescribiendo y definiendo las facultades y deberes de la Comisión de Servicio Público y los de sus funcionarios; prescribiendo y reglamentando la práctica y el procedimiento ante dicha comisión y en apelación, y para otros fines."

Los artículos 52 y 53 de esa ley disponen:

"Artículo 52.—*Concesiones que se hicieren.*—La Comisión tendrá poder para otorgar franquicias, derechos, privilegios o concesiones para fines públicos o cuasi públicos incluyendo el derecho de usar o cruzar carreteras, caminos o cauces de agua públicos; y para otorgar franquicias, derechos, privilegios o concesiones para el aprovechamiento de las aguas públicas para fines públicos o particulares. No estará facultada para conceder el dominio o aprovechamiento de terrenos o propiedades públicas o para otorgar franquicias, derechos, privilegios o concesiones para usos particulares, excepción hecha del aprovechamiento de aguas públicas, sin la aprobación de la Asamblea Legislativa.

"Artículo 53.—*Condiciones y clases de concesiones.*—La Comisión tendrá poder para determinar los términos y condiciones de las franquicias, derechos, privilegios o concesiones, que otorgare para determinar los casos en que deberán otorgarse; y estará facultada para exigir un canon periódico por el ejercicio de los mismos."

El artículo 3 de la Carta Orgánica es como sigue:

"No se impondrá ni cobrará derecho alguno sobre las exportaciones procedentes de Puerto Rico; pero podrán imponerse contri-

buciones e impuestos sobre la propiedad, ingresos, rentas internas, y por licencias, franquicias, privilegios o concesiones, cuando dichas contribuciones sean para los fines de los gobiernos insular y muncipales, respectivamente, y se impongan según las disposiciones y prescripciones de la Asamblea Legislativa de Puerto Rico. . .''

Aun si no hubiera otra disposición en la Carta Orgánica, dudamos seriamente que haya algo en esta ley que sea una limitación del poder de la Legislatura para delegar autoridad en la Comisión de Servicio Público para conceder franquicias y fijar los términos de las mismas. Sin embargo, el artículo 38 de la Ley Orgánica dispone en parte como sigue:

"Toda franquicia, derecho, privilegio y concesión de carácter público o cuasi público, será otorgada por una Comisión de Servicio Público compuesta de un Comisionado de Servicio Público, que será Presidente de dicha Comisión, y dos comisionados asociados nombrados por el Gobernador con el consejo y consentimiento del Senado. . . . Dicha Comisión queda facultada para desempeñar, y se le ordena que desempeñe, todas las funciones ejecutivas relacionadas con las corporaciones de servicio público que hasta ahora se han conferido por la ley al Consejo Ejecutivo, y aquellos deberes y funciones adicionales que se confieran a dicha Comisión por la Asamblea Legislativa. Ninguna franquicia, derecho y privilegio que otorgare la mencionada Comisión tendrá efecto hasta que haya sido aprobado por el Gobernador y se hubiese informado al Congreso, el cual por la presente se reserva la facultad de anularlos o modificarlos.

"*   *   *   *   *   *   *

"La Asamblea Legislativa de Puerto Rico queda autorizada por la presente para decretar leyes relativas a la reglamentación de los precios, tarifas y servicios de todos los porteadores públicos en Puerto Rico, y la Comisión de Servicio Público creada por esta Ley tendrá facultad para poner en ejecución las leyes de ese carácter mediante reglamentación adecuada.''

Conforme indica el apelado, dicho artículo 38 sólo contiene las limitaciones en él expresadas. A nuestro entender es perfectamente claro que cuando a la Comisión de Servicio Público se le dió la facultad de conceder franquicias el derecho a fijar los términos de las mismas estaba necesaria e inevitablemente implícito.

■ Dudamos más bien si la regalía impuesta es una contribución en el sentido estricto de la palabra, pero suponiendo que se haya ejercido el derecho a imponer contribucïones, es claro que la Legislatura, y especialmente el Congreso, tendría el derecho a otorgar la facultad de imponer tales contribuciones a una compañía que deriva su autoridad de una franquicia de la Comisión de Servicio Público. Tenemos además la idea de que la regalía que debía pagar la White Star Bus Line, Inc., participaba más bien de la naturaleza de un arrendamiento de otra causa (*consideration*) por la concesión de la franquicia, y de que no estaría sujeta a las restricciones que podrían surgir al considerar esta regalía como una forma de contribución. La White Star Bus Line, Inc., voluntariamente convino en pagar este tipo por otorgársele esta concesión.

■ La Corte de Distrito de San Juan resolvió que la demandada estaba impedida de alegar la inconstitucionalidad de la sección segunda de la franquicia que había aceptado y disfrutaba. La teoría es que una persona que se ha aprovechado de un acto inconstitucional no puede posteriormente alegar su inconstitucionalidad como defensa. *Daniels* v. *Tearney,* 102 U. S. 415 y casos citados en la página 421; *Grand Rapids etc. Co.* v. *Osborn,* 193 U. S. 17. Si bien no descansamos en este principio, estamos dispuestos a convenir con él, y esto dispone del quinto señalamiento de error.

■ El sexto señalamiento es que la Corte de Distrito de San Juan no tenía derecho a dictar sentencia mientras se hallaba pendiente ante la Comisión de Servicio Público una petición para enmendar y fijar el tanto por ciento que de los ingresos brutos la demandada estaba obligada a pagar. Somos de opinión que a pesar de estar pendiente esta solicitud sobre reducción, suponiendo que ello pudiera hacerse, el Pueblo de Puerto Rico tenía derecho nominalmente a recobrar el tipo fijado en la franquicia, y que cualquier rebaja hecha por la Comisión de Servicio Público podía ser objeto de algún procedimiento independiente o quizá dar lugar a una reconven-

ción (*set off*) en años posteriores. Dudamos, sin embargo, · si de conformidad con los términos de la franquicia la Comisión de Servicio Público, bajo cualesquiera circunstancias, tenía la facultad o autoridad para reducir la regalía para el primer año. En realidad la Corte de Distrito de San Juan resolvió que cualquier rebaja que la Comisión de Servicio Público pudiera hacer, no podía ser aplicable al primer año toda vez que ello equivaldría a dar a la resolución efecto retroactivo.

Contrario al segundo señalamiento de error, convenimos con la corte inferior en que el primer año había expirado totalmente. En realidad, el año finalizó el 14 de enero de 1929 y no el 15. El año completo expiró cuando transcurrieron los 366 días, por ser el 1928 un año bisiesto. Una visión más clara de esto aparece cuando uno considera todo un año natural. Una franquicia otorgada el primero de enero expira el 31 de diciembre y no el primero de enero. Esto es cierto aunque la franquicia misma decía que los pagos debían efectuarse una vez transcurrido un año o el 15 de enero de cada año.

Bajo el tercer señalamiento, que copiamos a continuación, la apelante ha presentado un cúmulo de argumentos:

"Erró la Corte *a quo* al no decidir que la demandada, como compañía de servicio público, tiene derecho a un beneficio razonable sobre el capital invertido; y al negarle ese derecho a virtud de la sentencia."

Según se puede ver por la franquicia y por nuestra decisión en *Santiago* v. *Comisión de Servicio Público de Puerto Rico, et al.*, 37 D.P.R. 501, a la White Star Bus Line, Inc., se le concedió un monopolio por las calles y carreteras de y entre San Juan y Río Piedras. Fué un derecho exclusivo. Por esto el Pueblo de Puerto Rico por conducto de la Comisión de Servicio Público, exigía compensación. Las citas hechas por la apelante en modo alguno nos convencen de que una corporación de Servicio Público está obligada a tener ganancias durante el primer año de su explotación. Por el contrario, cree-

mos que la regla general sería distinta. Cuando se otorga un derecho, especialmente un derecho exclusivo, debe esperarse que las utilidades de una corporación de servicio público procedan de su explotación tomada durante una serie de años. Antes de haber expirado un período mayor que un año sería imposible decir que se había privado a la corporación de su propiedad sin el debido proceso de ley, porque los años sucesivos fácilmente podrían más que compensar cualquier supuesta falta de beneficios durante el primer año. Tomemos, por ejemplo, *United Railways and Electric Company of Baltimore v. West, Chairman, et al.*, 280 U. S. 234, citado por la apelante. Cierto tanto por ciento de las utilidades fué parte de la cuestión considerada en dicho caso. Evidentemente, en la corte inferior una de las partes arguyó que habían existido supuestas tarifas inadecuadas durante largo tiempo y que debían continuar. Parte del argumento de la apelante fué:

"Disfrutando de tarifas inadecuadas durante largo tiempo el público no puede adquirir el derecho a continuar tales tarifas por más tiempo. Por el contrario, según las decisiones de esta corte, la cuestión no es si el servicio público ha esperado demasiado tiempo antes de atacar una tarifa confiscatoria, sino si ha esperado demasiado tiempo para hacer constar con razonable claridad que el tipo resultará realmente confiscatorio. Knoxville v. Knoxville Water Co., 212 U. S. 1; Willcox v. Consolidated Gas Co., 212 U. S. 19; Pennsylvania R. Co. v. Public Service Comm'n., 126 Md. 59."

De suerte que es evidente que el estado de los beneficios o pérdidas de la compañía durante el primer año no puede servir de norma o base para tratar de fijar una tarifa confiscatoria. La apelante discute las disposiciones de la sección segunda de la franquicia tal cual si fuera absolutamente obligatorio para la comisión hacer el ajuste el primer año. Hemos leído la fraseología de esta sección repetidas veces y no existe la obligación absoluta. A lo sumo estaría dentro de la sana discreción de la Comisión de Servicio Público hacer una rebaja si dicha entidad lo creía prudente, razonable y justo. La obligación a que la apelante da tanta insistencia no existía.

Necesariamente, la facultad debe residir en alguien y tendría que haber un gran abuso de discreción para que nosotros dijéramos que la Comisión de Servicio Público, con la demostración hecha por la demandada, estaba obligada a reducir el tipo de la regalía.

Bajo estas consideraciones carece de importancia que la corte inferior rehusara admitir prueba para demostrar las pérdidas totales de la compañía durante su primer año. El error, de haberlo, no fué perjudicial.

*Debe confirmarse la sentencia.*

### EN MOCION DE RECONSIDERACION

#### Julio 19, 1933

Estamos muy de acuerdo con la apelante en que la Comisión de Servicio Público pudo en su discreción haber reducido la regalía que la White Star Bus Line tenía que pagar por el primer año de sus operaciones, pero estamos plenamente convencidos de que la comisión no estaba obligada a hacerlo y que la White Star Bus Line no tenía derecho a exigirlo. De nuestra opinión original aparece suficientemente que a duras penas podía esperarse una ganancia para el primer año y la compañía se obligó a pagar el 4 por ciento de su ingreso bruto. En nuestra opinión anterior puede haber errores de concepto, o quizá algunas equivocaciones, pero la cuestión fundamental resuelta es que la compañía no tenía necesariamente derecho a una rebaja por el primer año de sus operaciones.

La apelante también insiste en que esta corte se equivocó al no resolver que había un pleito anterior pendiente entre las mismas partes. Por supuesto, no importa que la corte inferior creyera que las partes en los dos pleitos, El Pueblo de Puerto Rico en uno y el Tesorero en el otro, no eran las mismas. No vemos razón alguna para variar nuestra idea de que un pleito para cobrar contribuciones adeudadas no es la misma causa de acción que un *injunction* para impedir que el Tesorero las cobre. A nuestro entender, la alegación

de estar pendiente otro pleito por la misma causa de acción generalmente presupone una acción anterior radicada por el mismo demandante. La idea es que existe cierta especie de *estoppel* contra el demandante que inició el pleito anterior, y, por tanto, que no puede aprovecharse del segundo pleito mientras el ya radicado esté pendiente. Yendo ahora al nervio de la cuestión, sin embargo, estamos del todo convencidos de que el pleito anterior radicado por la White Star Bus Line jamás sería un impedimento contra el Tesorero hasta tanto la corte hubiera, en el pleito previo de *injunction*, tratado de impedir que el Tesorero procediera.

Respecto a la cuestión de si la Legislatura podía delegar en la Comisión de Servicio Público la facultad de fijar los términos y condiciones de la franquicia y de imponer una contribución o regalía a la compañía, nada tenemos que agregar a nuestra opinión original. También nos parece que la corte inferior no se equivocó al decir que surgió un impedimento (*estoppel*), pero no hacemos hincapié en ese punto.

La apelante también llama nuestra atención hacia el hecho de que erramos al decir que el primer año de las operaciones de la compañía empezó el 15 de enero, cuando, según la demandada, fué el 1°. de enero. No vemos la importancia del error, de serlo, y la discusión en nuestra opinión original surgió de algo contenido en los alegatos de las partes.

Siguiendo a la apelante, no podemos comprender cómo la Corte de Circuito de Apelaciones tendría alguna dificultad por el hecho de que no resolvimos claramente si la apelante tenía derecho a solicitar una reducción después de haber expirado el primer año. Todavía estamos inclinados a creer que la White Star Bus Line no tenía ese derecho legal una vez expirado el primer año, o aún antes, pero si estuviéramos equivocados con respecto a esto, no vemos por qué la corte de apelación ha de tener dificultad alguna. Tal vez la opinión adolecía de otros errores de expresión, pero estamos convencidos de que la conclusión fundamental era correcta, y *la moción de reconsideración debe ser declarada sin lugar.*